STATE of Missouri, Respondent,

v.

Mack Henry TEEGARDEN, Appellant.

No. KCD 29142.

Missouri Court of Appeals,
Kansas City District.

Dec. 5, 1977.

David V. Bear, Bear, Hines & Thomas, Columbia, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WASSER-STROM and SOMERVILLE, JJ.

SOMERVILLE, Judge.

The homicidal death of Arlie Everett Whittle (victim) on May 1, 1974, in Miller County, Missouri, resulted in Mack Henry Teegarden (defendant) being charged by information with first degree murder (Section 559.010, RSMo 1969 [1]). The jury before whom defendant was tried found him guilty of second degree murder (Section 559.020, RSMo 1969) and fixed his punishment at forty years imprisonment in the Missouri Department of Corrections.

On appeal defendant questions (1) the trial court's refusal to declare a mistrial, (2) the trial court's refusal to grant a continuance, (3) the trial court's refusal to quash the information, and (4) the trial court's conduct in permitting the Sheriff of Miller County to sit at the counsel table with the prosecuting attorney throughout the trial.

In view of defendant's tacit acceptance of the evidence as sufficient to support his conviction for second degree murder, only such facts believed necessary to give a broad overview of the case will be set forth. Prior to May 1, 1974, a feud erupted between the defendant and the victim. This feud, whose violent nature was manifested by several preliminary exchanges of violence, culminated in the victim's death. More particularly, defendant accosted the victim outside the latter's house near Eldon, Missouri, during the early morning hours of May 1, 1974, shot him with a shotgun, took him, while still alive, inside the house, and then set the house afire. The fire became such a blazing inferno that it destroyed the house and virtually destroyed the victim's body.

The testimony of one of the state's witnesses on direct examination revealed that defendant was an ex-convict. Defense counsel made no objection thereto, nor did he move to strike the testimony or request a mistrial at the time. Later, during the course of questioning the Sheriff of Miller County on direct examination, the state referred to the testimony just mentioned and asked the sheriff if he was notified when defendant was released from the penitentiary. The sheriff's response was that he thought he had received a "letter" to that effect. Again, defense counsel failed to object or seek affirmative relief of any kind. As a matter of fact, defense counsel extensively cross-examined the sheriff about his present knowledge of defendant's status as an ex-convict. Defense counsel's cross-examination of the sheriff raised a cloud of doubt as to whether the sheriff ever received a "letter" notifying him of defendant's release from the penitentiary. On redirect examination the state attempted to rehabilitate the sheriff by handing him what is surmised to have been an F.B.I. "rap sheet". It is impossible to tell whether the "rap sheet" was handed to the sheriff for the purpose of seeking to have it identified and admitted into evidence or whether it was handed to him for the purpose of refreshing his recollection. Regardless of the purpose sought to be achieved by the state, defense counsel objected to the "rap sheet" on the sole ground that it was not properly authenticated. Whereupon, the prosecuting attorney advised the court, "I'll withdraw it then, Your Honor", and did so. The "rap sheet" was withdrawn over the following protestation of defense counsel, "I want it in if you can get it in, if you'll present it in evidence." This unusual series of evidentiary events occurred toward the end of the second day of the trial. When the court recessed at 6:00 P.M. it appeared that the whole matter had been laid to rest. However, when trial of the case resumed the following morning defense counsel resurrected the matter by moving for a mistrial on the ground that the state had prejudicially injected evidence of defendant's conviction of a prior offense "before defendant's character had been put in issue."

▮ It is important to bear in mind that defendant's request for declaration of a mistrial revolves around certain evidence of the state which was never objected to by defendant, which never became the subject of a motion to strike by defendant, and which was never seized upon as the basis

---

1. Repealed by Laws, 1975.

for a mistrial until long after defense counsel had paraded it before the jury by extensively cross-examining the sheriff. To cap the matter, defense counsel stated in open court, with reference to the F.B.I. "rap sheet" supposedly showing defendant's previous conviction, "I want it in if you can get it in, if you'll present it in evidence." This court concludes that defense counsel, by reason of some theory of trial strategy, intentionally refrained from objecting to or seeking to strike the presently complained of evidence. Defendant's belated effort to have a mistrial declared was wholly inconsistent with all related preceding events and militates against his present claim. Closely in point, when a state's witness testifies as to an inadmissible matter without objection and is then extensively cross-examined by defense counsel, a subsequent motion to strike comes too late and no error attaches when it is denied. *State v. Young*, 24 S.W.2d 1046 (Mo.1930); *State v. Lehman*, 175 Mo. 619, 75 S.W. 139, 141 (1903). By the same logic, when a state's witness testifies to an inadmissible matter without objection or a motion to strike and is then extensively cross-examined by defense counsel, a subsequent motion for declaration of a mistrial comes too late and no error attaches when it is denied. An additional and equally compelling reason exists for holding the trial court free of error for not having declared a mistrial. Defendant took the stand on his own behalf and candidly admitted on direct examination that he had previously been convicted of a felony (stealing). Doing so, as a practical matter, reached back and wiped the purported basis of his motion for a mistrial clean of any prejudice. *State v. James*, 194 Mo. 268, 92 S.W. 679, 683 (1906).

Defendant faults the trial court for ruling unfavorably on his motion for a continuance. The original information lodged against defendant, filed June 13, 1974, charged that the victim's death resulted from the infliction of a mortal wound by means of a 12-gauge shotgun. On May 14, 1976, a copy of an amended information was delivered to defense counsel's office, which did not come to his attention until the following day, May 15, 1976. The case was set for trial for May 19, 1976. The state was given leave to file the amended information on May 18, 1976. This prompted the filing of a motion for a continuance by defendant which was denied by the trial court. The only change effected by the amended information charged that the victim's death resulted from the infliction of a wound upon the victim's body by means of a 12-gauge shotgun and by burning the victim's body. Rule 24.15 (Information—Amendment or Substitution—Continuance) reads as follows:

> "No amendment of the information or substitution of an information for an indictment as provided in these Rules shall cause a delay of the trial unless the defendant shall satisfy the court that such amendment or substitution has made it necessary that he have additional time in which to prepare his defense."

This rule, by its very terms, explicitly vests trial courts with considerable discretion in granting or denying continuances sought in connection with the amendment of informations. As a broad, general proposition, reviewing courts duly refrain from interfering with denials by trial courts of requests for continuances, absent being convinced that the latter abused their discretion by acting in an arbitrary, capricious, or oppressive manner. *State v. Reece*, 505 S.W.2d 50, 52 (Mo.1974); *State v. Cuckovich*, 485 S.W.2d 16, 21–22 (Mo.banc 1972); and *State v. Davison*, 545 S.W.2d 723, 724–25 (Mo. App.1977). More specifically, when an accused fails to demonstrate that he has been prejudiced, a charge will not lie that a trial court arbitrarily, capriciously or oppressively abused its discretion by refusing to grant a request for a continuance occasioned by an amended information. *State v. Withers*, 347 S.W.2d 146, 148–49 (Mo.1961). Defendant failed to suggest or offer any convincing proof that he was prejudicially surprised by the contents of the amendment or that a continuance was necessary in order to prepare an adequate defense. Weighing heavily against any claim of prejudice or surprise is the fact that the record discloses

that the burning of the victim's body was thoroughly gone into at defendant's preliminary hearing. Defendant's failure to demonstrate that he was surprised by the contents of the amendment and therefore needed additional time to prepare an adequate defense, negates any claim of prejudice associated with the trial court's refusal to grant a continuance. *State v. Withers*, supra; and Rule 24.15, supra.

Immediately prior to start of the trial defendant moved to quash the amended information on the ground that to proceed would violate his constitutionally guaranteed right to a speedy trial. Chronologically, defendant was charged with murder in the first degree by information on June 13, 1974, and his trial commenced on May 19, 1976. With the exception of several days, defendant was free on bond during the crucial period of time.

■■■ The "speedy trial" guarantee of the Sixth Amendment to the Constitution of the United States is applicable to state court proceedings by reason of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The period of time which elapses between a criminal charge and a subsequent trial is not conclusive as to whether an accused has been denied a speedy trial. *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). The Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), concluded that there was no fixed formula that could be universally employed to determine when an accused had been denied his constitutional right to a speedy trial. Instead the Supreme Court formulated an *ad hoc* balancing test to be used at the appellate level for determining whether an accused has been denied a speedy trial. A balance is struck by weighing four factors: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right; and (4) prejudice to the accused. In the instant case, notwithstanding a delay of approximately two years, no claim was made by the accused that his ability to defend himself was impaired, no effort was made by him to secure an earlier trial date, and the trial court was caught in the throes of an extremely crowded docket. On balance, it cannot be said that defendant was denied a "speedy trial" in a constitutional sense.

■■■ Finally, defendant questions the propriety of the Sheriff of Miller County sitting at the counsel table with the prosecuting attorney throughout the trial. The sheriff was the complaining witness in the case and no one invoked the rule to exclude the witnesses. Historically, sheriffs in Miller County always sat at the counsel table with the prosecuting attorney during the trial of criminal cases, apparently on the theory that the sheriff was the state's alter ego and in that sense a party to the action. A consistent practice, however steeped in antiquity, cannot be condoned on that basis alone. In many instances, to do so would only serve to perpetuate a wrong. This court concludes that for dispositional purposes the practice under attack falls into that virtually fathomless legal grey area formally spoken of as judicial discretion. An abuse of judicial discretion, not merely an exercise of judicial discretion, must be shown to afford an accused relief. Although defendant has questioned the propriety of permitting the sheriff to sit at the counsel table with the prosecuting attorney throughout the trial, he has failed to suggest or demonstrate any resultant prejudice. Consequently, the matter is controlled by the broad principle that conduct of a trial, save only as to procedures prescribed by statute or rule, generally rests within the sound discretion of the trial court. *State v. Johnson*, 485 S.W.2d 106, 117 (Mo.1972); *State v. Pinkston*, 333 S.W.2d 63, 66–67 (Mo.1960); and 23 C.J.S. Criminal Law § 961, p. 836. Permitting the sheriff to sit where he did throughout the trial was an acceptable exercise of judicial discretion as no resultant prejudice indicative of an abuse of discretion was shown and no statute or rule existed compelling a different procedure.

Judgment affirmed.

All concur.