STATE of Missouri,
Plaintiff-Respondent,

v.

Paul C. McMILLAN,
Defendant-Appellant.

No. 11123.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 22, 1980.

Motion for Rehearing or to Transfer to
Supreme Court Denied Feb. 4, 1980.

Application to Transfer Denied
March 11, 1980.

John Ashcroft, Atty. Gen., Teresa Aloi Angle, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Loren R. Honecker, Springfield, for defendant-appellant.

GREENE, Judge.

Defendant Paul C. McMillan was jury-convicted of two counts of robbery in the first degree by means of a dangerous and deadly weapon in violation of § 560.120, RSMo 1969, V.A.M.S., and was sentenced by the court to 20 years' imprisonment on each count, said terms to run consecutively in accordance with the provisions of the Second Offender Act. This appeal followed.

The relevant evidence is as follows. On December 1, 1977, Alan Misner, an employee of Clark Service Station, 1302 East Kearney, Springfield, Missouri, was robbed of money belonging to his employer. He described the robber to the police as approximately 5'9" tall, 130–140 pounds, and wearing a dark stocking cap and a green army field coat. The robber pulled a pistol and obtained the money by fear of force. Misner had the opportunity to observe his assailant for two or three minutes during the holdup. The second robbery occurred on December 14, 1977, on West Kearney in Springfield. At that time and place, Edwin Camacho was the cashier at a Handy Food Store. A man entered, pulled a gun and, upon demand, was given $80 by Camacho. Camacho observed the robber for three to four minutes before he left. Camacho described the robber to police as around 5'9" tall, in his 20's, and wearing a dark blue stocking cap, green army coat, boots and jeans.

Dan Wilson, a detective with the Springfield Police Department, was assigned to the two robbery cases and interviewed Misner and Camacho. Wilson was then contacted by Bill Bates, an officer with the Missouri Department of Probation and Parole. Bates advised Wilson that the defendant was on parole from the state of California, where he had been convicted of armed robbery, and that his description approximated the description given the police by Misner and Camacho. Bates gave Wilson a photograph and description of the defendant. Wilson took the photograph, together with other photographs taken from police department files, and showed the group of photographs to the two victims at separate viewings. Both victims identified the picture of the defendant as the man who had robbed them.

Based on this information, Wilson went to the defendant's home in Springfield and arrested him. Defendant consented to a search of his vehicle at that time. Among articles of clothing removed from the automobile, and later introduced into evidence at the trial, was a navy blue stocking cap. After being taken to the police station, defendant agreed to a one-on-one confrontation with each of the victims and signed a waiver to that effect. Both Misner and Camacho identified the defendant as the robber at the time of confrontation, later picked him out of a lineup and made an in-court identification of him at time of trial. Defendant, who had four prior convictions including two for robbery, claimed an alibi at time of trial. Evidently, the jury did not believe him.

On appeal, defendant contends that the trial court erred in 1) overruling defendant's objections and motion for mistrial based on the state's use of exhibit 5, which consisted of mug shot photographs, including one of the defendant, and the reference to such photographs at trial as mug shots; 2) overruling defendant's motion for mistrial based on the fact that he could not effectively cross-examine as to the prior photographic identifications by the victims for the reason that the photograph of defendant included in exhibit 5 was of a distinctly smaller size, and had a prejudicial statement on its reverse side, which factors could have been involved in the identification, or affected how credible the jury felt the identification was, but to do so (cross-examine) would have been prejudicial to defendant by the disclosure of the notation; 3) permitting Officer Wilson to testify that photographs, including that of defendant, were shown to victims Misner and Camacho, who made responses, following which defendant was arrested, for the reason that such evidence was violative of the hearsay rule in that the actual effect was that the officer testified to an extrajudicial identifi-

cation by other persons, which was plain error; 4) allowing the defendant to be tried and sentenced under the Habitual Criminal Act for the reasons that at the hearing for such determination, the court based its order, in large part, on state's exhibit A, a "certified transcript of serial record" which had attached thereto certain photographs and fingerprints to which the certificate did not extend, and the identification of the defendant as one previously imprisoned was therefore incomplete in that no basis whatever for the admission of these items as part of exhibit A existed; 5) overruling defendant's motion for judgment of acquittal at the close of all the evidence for the reason that there was insufficient evidence for submission of the case in that there was only suspicion that defendant was the perpetrator of the crimes . charged, and there was no substantial evidence that any property that belonged to the entities aleged in the information had been taken, and, in the case of Count I there was no substantial evidence that anything of value was taken; and 6) in overruling defendant's motion to suppress (1) products of search and seizure, being a knit cap and shirt, and (2) the identification at the police station in a one-on-one confrontation, and in allowing such evidence at the trial, for the reason that such matters flowed directly without intervening events of significance from defendant's arrest which was unlawful and without probable cause in that the officer knew only that defendant might be the person sought.

## THE "MUG SHOT" ISSUE

At trial, during the direct examination of witness Misner, the prosecutor showed Misner a group of photographs from which Misner selected defendant's photograph as a picture of the man who had robbed him. During such examination, the prosecutor, on one occasion, referred to the pictures as "mug shots". No objection was made to the remark at the time it was made. Later, after defendant had completed his cross-examination of Misner, and the witness had been dismissed, defendant moved for a mistrial on the grounds that the use of the "mug shots" by the prosecutor was conducted in close proximity to the jury and that the jury could see the "mug shots", even though not in evidence, and thereby infer that defendant had a criminal record. The trial court determined that the prosecutor had not intentionally displayed the photographs to the jury and that, in any event, it was extremely doubtful that the jury saw the photograph of the defendant. The court denied the motion for mistrial, but offered to instruct the jury on the matter, if defendant so desired, which offer was declined. Subsequently, during the testimony of witness Camacho, he used the term "mug shots" several times in describing his photographic identification of defendant. Defendant did not object to any of these references. Later, when the witness was handed the group of photographs and asked additional questions concerning . them, defendant objected to the way the photographs were being handled and the prior use of the words "mug shots", and again asked for a mistrial. The motion was denied. The trial court again offered to admonish the jury, and the offer was declined.

By his failure to timely object to the use of the term "mug shots" by the prosecutor and witnesses Misner and Camacho at the time the utterances were made, defendant cannot, at a later time, complain of such alleged error and has preserved nothing for review on this point. *State v. Harris*, 534 S.W.2d 516, 518 (Mo.App.1976). Plain error review of this point is not warranted. The use of the term "mug shots" does not necessarily indicate the commission of prior criminal offenses. *State v. Rutledge*, 524 S.W.2d 449, 458 (Mo.App.1975). Defendant has the burden of showing that the use of the term constituted evidence of prior criminal offenses on his part, and that the court erred to his prejudice in its rulings. *State v. Leady*, 543 S.W.2d 788, 790 (Mo.App.1976). Defendant has not sustained that burden. He assumes, without proof of any sort, that the jury inferred that defendant had a prior criminal record by the use of the term "mug shots" by the witnesses. Such assumption is invalid un-

der the facts here. Defendant also contends use of the photographs was cumulative evidence in the light of the in-court identification and served no purpose other than to prejudice the defendant. Where the identity of defendant is an important issue, as it was here, the state should not be unduly limited as to its quantum of proof, *State v. Harris*, supra, at 522, as it is the duty of the state to present as strong a case of identification as it fairly can.

■ The drastic remedy of a mistrial, urged by defendant at time of trial on these issues, should be exercised only in extraordinary circumstances. *State v. Rutledge*, supra, at 457. No such circumstances exist here to show that the alleged prejudicial effect of the words "mug shots", and the claimed opportunity of the jury to see the pictures and deduce that they were evidence of prior crimes committed by the defendant, were so grievous that the error could have been cured in no other way than by mistrial.

■ Finally, even if there had been error in the "mug shot" utterances, and in the use of the photographs by the prosecutor during his examination of the two robbery victims, the defendant, by taking the stand and admitting, on direct examination, that he had been previously convicted of numerous felonies, "reached back and wiped the purported basis of his motion for mistrial clean of any prejudice". *State v. Teegarden*, 559 S.W.2d 618, 621 (Mo.App.1977). Also, see *State v. Jones*, 531 S.W.2d 67, 73 (Mo.App.1975). We find no prejudicial error in the trial court's denial of defendant's motions for mistrial based on the use of the term "mug shots" and the use of the photographs by the prosecutor during his examination of eyewitnesses to the crime. Defendant's point one is denied.

## THE CROSS–EXAMINATION ISSUE

■ In point two, defendant complains that he could not effectively exercise his constitutional right of cross-examination of Misner and Camacho, concerning their photographic identification of defendant, without revealing evidence of defendant's past crimes. The record indicates that defendant failed to preserve this issue for review. The objections defendant raised during trial, that the photographic display denied his right of cross-examination for the reasons that the photograph of defendant was smaller than the others and that the reverse side of defendant's photograph contained prejudicial comments identifying defendant as a habitual criminal, were not made until after the witnesses, who testified concerning the photographs, had finished their testimony. Constitutional issues must be raised at the first opportunity in order to preserve them for review, and an objection not made until after an answer is given is not timely. *State v. Graham*, 527 S.W.2d 936, 942 (Mo.App.1975). In addition, defendant did not raise the contentions made here in his pretrial motion to suppress identification by mug shots and, therefore, did not preserve the point by such motion. *State v. Redd*, 550 S.W.2d 604, 606–607 (Mo. App.1977).

■ Furthermore, defendant merely assumes that the identification procedures were somehow suggestive, because defendant's photograph was smaller than the others and that possibly the witnesses had viewed the writing on the back of the photograph prior to their identification of defendant. There is nothing in the record to support such assumptions. When defendant belatedly raised the point in issue, the trial court offered defendant the opportunity to voir dire the witnesses (even though they had already been dismissed) to determine if, in fact, they had viewed the prejudicial writing on the back of the photograph prior to their identification of the defendant. Defendant refused the offer. Defendant's complaint of error is completely speculative and is absent factual support. It is not reviewable. *Ward v. State*, 451 S.W.2d 79, 81 (Mo.1970). The point is denied.

## THE HEARSAY ISSUE

At trial, Officer Wilson testified as follows:

"Q. Now, what action, if any, did you take in response to acquiring this photograph and the two victims of the robberies on the 14th and the 1st of December?

A. I took the photograph that I was furnished along with other photographs taken from the files of the police department and showed those photographs to both victims of the robbery.

Q. And from—or after viewing those photographs and the response you received from the two victims, what conduct did you take?

A. I arrested a suspect with regards to the robberies.

Q. Is that suspect in the courtroom here today?

A. Yes, he is.

Q. Would you point him out, please?

A. Sitting right here (indicating).

MR. CUMMINGS: Your Honor, may the record reflect that he has gestured toward the defendant?

THE COURT: It will.

MR. CUMMINGS: Thank you."

Defendant contends that such testimony violates the hearsay rule, in that Wilson was testifying to an extrajudicial photographic identification of defendant by one of the victims and that such testimony is prejudicial error under the caveat of *State v. Degraffenreid*, 477 S.W.2d 57, 62–64 (Mo. banc 1972).

*Degraffenreid* does not apply here. Defendant failed to object to the alleged improper statement of Officer Wilson at time of trial. He did not present the issue in his motion for new trial. Issues not presented in a motion for new trial are not preserved for appellate review. *State v. Gant*, 490 S.W.2d 46, 49 (Mo.1973). Under such circumstances, we conclude that defendant agreed that the testimony in question should be admitted and waived any objection thereto.

Defendant requests review under the plain error doctrine pursuant to Rule 27.20(c), V.A.M.R. We decline to do so. The identification of defendant as the robber is much stronger in this case than it was

in *Degraffenreid*. Independent evidence presented at trial establishes that the victims of the two separate robberies identified defendant as their assailant from photographs, during a face-to-face confrontation, at a lineup, and in court. Each victim observed the defendant for several minutes during the robberies. Both witnesses were able to give the police reasonably accurate physical descriptions of the robber. A blue stocking cap, found in defendant's automobile, was identified by Camacho as being similar to the cap worn by the robber. The in-court identification of defendant was positive and unequivocal. In addition, the indirect comment of Officer Wilson established, at best, only an inference of photographic identification based on hearsay and, as such, was cumulative and harmless. See *State v. Kennedy*, 513 S.W.2d 697, 699–700 (Mo.App.1974), where *Degraffenreid* was distinguished. It is our opinion that any bolstering effect possibly associated with Wilson's testimony did not result in manifest injustice or a miscarriage of justice. See *State v. Johnson*, 536 S.W.2d 851, 854–855 (Mo.App.1976). The point is denied.

## WAS DEFENDANT PROPERLY IDENTIFIED AS A SECOND OFFENDER?

In this point, defendant contends that there was no evidence, introduced at a court hearing to determine the applicability of the Second Offender Act, that proved that defendant was the same person as the one described and depicted in state's exhibits A and B. Exhibit A was a certified transcript of a serial record of the Missouri Department of Corrections. The exhibit bore the name of Paul Charles McMillan. Attached to the transcript were fingerprint copies and two photographs of a man wearing prison number 12553. The same number was shown as the register number of McMillan on the serial record. Exhibit B was a certified copy of a judgment and sentence record of the Circuit Court of Greene County, Missouri. It shows that on June 17, 1966, Paul Charles McMillan was sentenced to confinement in the penitentiary for a term of 2 years for the crime of car

tampering. After comparison of the exhibits and viewing the defendant in this case, the trial court found that defendant was the same person as the one convicted of car tampering, as shown in exhibits A and B, concluded that the Second Offender Act was applicable in this case, and ruled that, if found guilty, defendant should be sentenced under the provision of the Second Offender Act.

■ In support of his position, defendant first claims that, because exhibits A and B use the name "Paul Charles McMillan" and because he was charged in this case as "Paul C. McMillan", in some magical way the second offender determination process was tainted. Not so. The identity of first and last names alone authorized a finding by the trial court that defendant was the person previously convicted. *State v. Michael*, 361 S.W.2d 664, 666 (Mo.1962). A person's middle name has little, if any, legal significance. *State v. Witt*, 371 S.W.2d 215, 220 (Mo.1963). The trial court had a right to rely on the documents in question as part of the proof on the issue.

■ Defendant next claims that, since the fingerprints and photograph attached to exhibit A were not certified, they should not have been admitted as evidence, and that, absent such evidence, there was insufficient additional evidence to show that defendant was the person referred to in exhibits A and B. We do not agree with this contention. The use of photographs and fingerprints included with the certified transcript of serial record as aids in determining whether defendant is the same person referred to in a serial record has been judicially approved. *State v. Trevino*, 428 S.W.2d 552, 554 (Mo.1968). See also *State v. Shumate*, 516 S.W.2d 297, 299–300 (Mo. App.1974) and *Parker v. State*, 539 S.W.2d 746, 747 (Mo.App.1976).

■ In addition, defendant testified at trial that his name was Paul Charles McMillan, and he admitted the prior convictions, sentence and imprisonment for the offense of car tampering that is the subject matter of this issue. Therefore, no prejudice could have resulted to defendant from being sentenced under the Second Offender Act where he admitted the prior offense at trial. *State v. Dean*, 400 S.W.2d 413, 416 (Mo.1966). The admission of the prior offense, of and by itself, was sufficient to support a finding that the Second Offender Act was applicable. *State v. Brown*, 543 S.W.2d 56, 59 (Mo.App.1976). The point is denied.

## THE SUFFICIENCY OF EVIDENCE ISSUE

On this point, defendant contends that the state failed to present sufficient evidence that defendant committed the two crimes charged in the information, in that the eyewitness testimony of the victims created a mere suspicion that defendant was the person who robbed them. Our review of this point is limited to the question of whether the evidence was sufficient to support the jury's findings. *State v. Longmeyer*, 566 S.W.2d 496, 499 (Mo.App.1978).

■ Each victim made a positive, unequivocal identification of defendant as the person who robbed them. This was sufficient to support the conviction. *State v. McNeal*, 539 S.W.2d 722, 727 (Mo.App.1976). The jury was entitled to disbelieve defendant's alibi witnesses. *State v. Hill*, 438 S.W.2d 244, 248 (Mo.1969). The evidence was sufficient to submit to the jury the issue of criminal agency of the defendant.

Defendant further maintains, in connection with this point, that the state failed to prove 1) the ownership of the property taken at both robberies, 2) the location of the scene of the robbery described in Count I of the information, and 3) the value of the property taken during the robbery described in Count I. At trial, Misner and Camacho both testified that they had care and custody of the property of their respective employers, Clark Service Station and Handy Food Store. Misner, the service station attendant, handled the money for the station. He had a coin changer, and kept the bills in his pocket. On demand, Misner removed the bills from his pocket and gave them to the robber. No one asked him what the total value of the bills was.

 From the facts, the jury could infer that the bills were money belonging to Clark Service Station. The evidence was sufficient to show the identity of the person from whose control and custody the money was taken. The basic elements of robbery are the taking of property of another by violence and fear. *State v. Parcel*, 546 S.W.2d 571, 573 (Mo.App.1977). Since ownership by a specific person of the property taken is not material to and does not affect the offense of robbery, as long as it is shown that it was not the property of the accused, *State v. Manns*, 533 S.W.2d 645, 648 (Mo.App.1976), there can be no prejudice to the defendant merely because the testimony of ownership could have been more precise. Defendant was not entitled to a perfect trial, only a fair one. Camacho's testimony, that, on demand backed by an implied threat of armed force, he removed money from a cash register in the Handy Food Store and gave it to the defendant, was sufficient to justify an inference that the money belonged to the Handy Food Store. *State v. Scott*, 534 S.W.2d 537, 540–541 (Mo.App.1976).

As to the venue question, Misner testified that the Clark Service Station was located in Greene County Missouri. Nothing more was required. *State v. Williams*, 542 S.W.2d 567, 568 (Mo.App.1976).

Finally, the word "bills" used by Misner in his testimony referred to lawful paper money of the United States. Webster's New International Dictionary, Third Edition, defines "bill" as a "piece of paper money". Courts recognize that "money" is generally understood to mean lawful money of the United States of some value. *State v. Darby*, 165 S.W.2d 419, 420 (Mo.1942); *State v. Gabriel*, 342 Mo. 519, 525–526, 116 S.W.2d 75, 78 (1938). We find no error on this point. It is denied.

#### THE PROBABLE CAUSE FOR ARREST ISSUE

In his final point, defendant contends that his arrest by Officer Wilson was without probable cause, was illegal and, therefore, 1) the blue stocking cap taken by Wilson from defendant's car and subsequently introduced into evidence, and 2) the testimony concerning the face-to-face confrontation of defendant by the victims constituted prejudicial inadmissible evidence.

 The evidence clearly supports a finding of probable cause for the arrest of defendant. See *State v. Tomlin*, 467 S.W.2d 918, 919 (Mo.1971), and *State v. Robinson*, 484 S.W.2d 186, 190 (Mo.1970). Further, defendant consented to a search of his automobile and agreed to a face-to-face confrontation with the victims. The arrest was legal and the search and confrontation that followed were legal. The results obtained from such incidents constituted admissible evidence. The point is denied.

We have carefully reviewed the entire record and do not find any prejudicial error. The information was legally drawn, the trial was a fair one and the judgment and sentence were proper, under the facts and circumstances of the case.

The judgment is affirmed.

All concur.