**STATE of Missouri, Respondent,**

v.

**David GORDON, Appellant.**

**No. 44044.**

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 8, 1983.

Motion for Rehearing/Transfer to Supreme Court Denied April 15, 1983.

Application to Transfer Denied May 31, 1983.

Claude Hanks, Creve Coeur, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Theodore A. Bruce, Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

STEPHAN, Judge.

This is an appeal from a second degree murder conviction. The defendant, David Gordon, was found guilty by a jury of murdering Larry Jones, and was sentenced in accordance with the verdict to a period of fifty years. We affirm.

On January 6, 1980, at approximately 1:00 p.m., Larry Jones, Darvel King, and two other men stood talking on the street in front of the Cabanne Courts Apartments. A man dressed in a green Eskimo coat walked up to them, pushed King and the others aside and began hitting Jones. The man pushed Jones against a parked truck, pulled out a gun and hit Jones a couple of times with it and then shot him in the head. The assailant looked at Jones' body very briefly, then walked away. Larry Jones died on January 9, 1980, from this gunshot wound to the head.

The defendant was arrested and shown in a lineup to three eyewitnesses to the shooting. After viewing the lineup twice, all three identified the defendant.

■ As his first assignment of error, defendant maintains that the trial court abused its discretion in overruling defendant's motion for mistrial based on a question asked by the prosecutor in his cross-examination of defendant. After defendant testified during direct examination as to his prior convictions, the following occurred during cross-examination by the prosecutor:

Q. I notice that you said that you've been convicted of Stealing from a Person.

A. Yes.

Q. And I notice that you said you plead [sic] guilty to that.

A. Yes.

Q. But actually that's not what you were charged with originally.

MR. HANKS: Just a minute. I object. May we approach the bench?

The defense counsel subsequently requested that a mistrial be granted and that the jury be instructed to disregard the question on the grounds that only prior convictions, not charges, were admissible. On appeal, defendant develops the argument that an inquiry about a charge for which no conviction was obtained amounted to a cross-examination into prior arrests. Consequently, defendant claims that the mere asking of the question suggested to the jury that defendant was charged with a more serious crime than that of which he had been convicted. We do not agree.

The vague inquiry by the prosecutor as to what defendant originally was charged

with did "stop short of detailing the particular acts alleged to have been committed by the defendant ..." *State v. Williams,* 588 S.W.2d 70, 74 (Mo.App.1979). No reversible error occurred under these particular circumstances, given that there was no indication in the question itself as to what the answer, i.e. the charge, was. Furthermore, defendant was not required to and did not answer, and the prosecutor abandoned this line of questioning. Having so ruled, however, we again caution prosecutors to limit their cross-examination relating to a defendant's prior conviction to the fact of the conviction itself without reference to details leading up to it.

As an addendum to his first point, defendant urges that the trial court should have made a curative effort to instruct the jury to disregard the question. In view of the relative vagueness of the inquiry by the prosecutor, the trial judge in his superior position could well have determined that there was no need to emphasize the matter to the jury by "curative" comments. Defense counsel did not press the request for such an admonition at the time the trial court announced the denial of the motion for a mistrial, and we see no reason to pursue the matter here.

■ The defendant next contends that the trial court erred in overruling defendant's objection to the State's examination of its own witness, Darvel King, because it amounted to cross-examination where the witness displayed no hostility or reluctance to testify; therefore, the trial court's action constituted an abuse of discretion prejudicial to defendant. We disagree.

At trial, King initially testified on direct examination that he had not seen the man who shot Larry Jones before the shooting nor did he see the assailant anywhere in the courtroom. The prosecutor then posed the following question to King: "Well now, let me ask you something else. Have you ever said to any police officer or to me or anybody else that the man just favored the guy that shot him?" Before the witness answered, defense counsel objected to the form of the question as constituting cross-examination. Several questions of a similar nature followed and were objected to without definite rulings by the trial court. King later, on direct examination, identified defendant as the man who shot the victim.

■ The trial court is vested with discretion to permit leading questions and, unless that discretion is abused, there is no reversible error. *State v. Myers,* 538 S.W.2d 892, 896–897 (Mo.App.1976).

We concur with the trial court's assessment that the questions, although leading in nature, did not constitute an attack on King's testimony, nor amount to an impermissible attempt to bolster it. The prosecutor was making a legitimate attempt to refresh King's memory about previous identifications he had made. The witness later explained on cross-examination concerning the events about which he was testifying, "You see, that was a while back. I got to remember, it's just popping up in my mind." See *State v. Martin,* 530 S.W.2d 447, 450 (Mo.App.1975). Moreover, the leading questions were clearly occasioned by the prosecutor's genuine surprise at receiving answers he had not expected. The witness had previously identified the defendant to the prosecutor with certainty; at trial, the witness was less than unequivocal until his memory was refreshed by the questions. We have examined the transcript carefully and are convinced that no abuse of the trial court's discretion occurred. *State v. Woolford,* 545 S.W.2d 367, 373 (Mo.App.1976); *State v. Sutton,* 454 S.W.2d 481, 488 (Mo. banc 1969).

■ In his third point, defendant claims that the trial court erred in overruling defendant's motion for directed verdict because the evidence adduced at trial was insufficient for the jury to find defendant guilty of second degree murder beyond a reasonable doubt.

In reviewing defendant's argument relating to the sufficiency of the evidence, we recognize the general principle that all evi-

dence supporting the conviction is considered true and all inferences favorable thereto are indulged. *State v. Simmons,* 494 S.W.2d 302, 303 (Mo.1973); *State v. Heinz,* 607 S.W.2d 873, 881 (Mo.App.1980).

The facts recited at the outset of this opinion refute the defendant's claim as to the sufficiency of the evidence to support the verdict. From that evidence, the jury could find each element of the crime of second degree murder as defined in the instruction given to the jury and about which defendant makes no complaint. The jury could properly have found that the defendant was the initial aggressor in the altercation with Larry Jones, that defendant continued punching Jones in spite of the latter's cries asking what he had done, and that defendant then produced a gun from inside his coat and shot Jones in the head. Use of a deadly weapon upon a vital part of the body, in itself, supports a finding of murder in the second degree, unless some other factor appears. None is present here. *State v. Little,* 601 S.W.2d 642, 643 (Mo.App.1980).

In his attack on the sufficiency of the evidence, defendant points to the fact that he presented evidence that he spent the afternoon of the shooting with friends at a tavern watching football on television. This was done through the defendant's own testimony and that of an acquaintance, Henry Shannon. The jury obviously did not believe that evidence; and, indeed, it was not bound to do so. Such questions of fact are peculiarly within the province of the jury, and the alibi evidence did not raise a reasonable doubt as a matter of law. *State v. Donahue,* 625 S.W.2d 947, 949 (Mo. App.1981).

In his final point defendant argues that the trial court erred in allowing, without remedial action, certain statements by the prosecutor in closing argument. Two of the statements referred to Mr. Shannon and his testimony. The first was prompted by a letter from defense counsel to the prosecutor which had been placed in evidence and which advised that Shannon would be called by the defense and would testify that defendant was not at the scene of the crime but was with Shannon. On this point, the prosecutor said:

"I have no doubt that Mr. Shannon sat there and lied to you, and whenever I get these letters, I get them all the time. You know this one says what he's going to say. He's either lying or telling the truth and I know he's lying."

Defense objection to this statement was sustained and the jury was instructed to disregard it.

Later, in further reference to Shannon, the prosecutor said:

"Face it, I don't care what people's personal lives are like, but here's a man who's still going out with somebody else's wife. Still married. You know, is he the kind of man who would be willing to lie? He's living a lie. He's living a lie right there.

"I have no problem he's lying on the stand and I have no doubt he's got his stories together partially before the arrest and three months later."

This comment was obviously brought about by the fact that, after Shannon's female companion at the tavern had been repeatedly referred to as his "fiance," Shannon admitted that he did not pick her up at her home on the day of the killing because she was married and living with her husband. Asked if this did not disqualify her as his betrothed, Shannon responded that he nevertheless considered her as such. Defense objection that the comment was "beyond the scope of the evidence" was overruled; but, when defense counsel added that it interjected the prosecutor's personal opinion, the objection was sustained and the jury instructed to disregard the comment.

The comments in the closing argument concerning the defendant amounted at most to an expression of the prosecutor's view that the defendant had been in trouble with the law many times for driving without a license because he had never gone to the trouble of getting a license "because he doesn't care. The law means nothing to him..." Later, in reference to the defendant, the prosecutor said, "I mean, Mr. Innocent Young Man, he's been to the penitentiary already," and referred to him as a

"tiger." Objections to these statements were sustained forthwith by the trial court; and, when defendant's counsel asked that the jury be instructed to disregard them, the request was granted. In short, defendant received all the relief he requested at trial.

The thrust of defendant's final point is that the prosecutor "personalized" his argument with these comments and that the trial court should have taken remedial action beyond that which he requested. When a trial court grants all the relief sought, defense counsel's satisfaction with the corrective measures taken is assumed, and nothing is preserved for subsequent review. *State v. Mabry,* 602 S.W.2d 1, 2 (Mo.App.1980); *State v. Sanders,* 577 S.W.2d 186, 187 (Mo.App.1979). We have, nevertheless, closely examined the argument against the backdrop of the entire trial and have found nothing in it suggestive of basic unfairness to the defendant.

The judgment is affirmed.

STEWART, P.J., and CRANDALL, J., concur.