STATE of Missouri, Plaintiff-Respondent,

v.

George E. RAMSEY, Defendant-Appellant.

No. 13302.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 7, 1984.

John D. Ashcroft, Atty. Gen., Charles E. Smarr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

James G. Gregory, Montgomery City, for defendant-appellant.

PREWITT, Judge.

Defendant was charged with, and, following a jury trial, convicted of the second-degree murder of his mother. He was sentenced as a persistent offender to life imprisonment. The charge was filed in Cole County and was transferred to Greene County when a change of venue was granted. Defendant raises four points, none of which are concerned with the sufficiency of the evidence to support the conviction. Therefore, we do not summarize the evidence but set forth in our discussion of defendant's points only that relevant to the questions raised. The evidence clearly was sufficient for the jury to find defendant guilty.

We first consider defendant's contention that the trial court erred in overruling his motion to suppress evidence obtained from the entry into the residence of defendant and his mother. He asserts that the search of the premises, without a search warrant, violated the United States and Missouri Constitutions.

■ In general an entry and search without a warrant are deemed unreasonable under the Fourth Amendment to the United States Constitution unless the action falls within certain carefully delineated exceptions. *State v. Epperson*, 571 S.W.2d 260, 263 (Mo. banc 1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979). Among the exceptions are searches in response to a "need for help" or an "emergency". Id. 571 S.W.2d at 263–264.

■ Defendant lived with his mother, Vinita Ramsey, in her house in Jefferson City. She was employed as Secretary of the Missouri Senate. On Monday, August 30, 1982, at about 7:00 a.m., Margaret Towson, the Assistant Secretary to the Senate, who often rode to work with her, telephoned the Ramsey residence to advise

Mrs. Ramsey that she was going to drive to work by herself. Defendant answered the phone and took the message. Approximately fifteen minutes later, defendant called Margaret Towson to advise her that Mrs. Ramsey's blood pressure was high and he was going to take her to the hospital.

Mrs. Ramsey did not show up for work that day. Margaret Towson and other senate employees checked with local hospitals and with Mrs. Ramsey's personal physician regarding her illness. They learned that she was not in a local hospital and that her physician was not aware that she had any illness. Mrs. Towson also learned that Mrs. Ramsey, without explanation, had failed to keep a dinner date on Sunday, August 29, 1982. When Mrs. Ramsey did not show up for work the next day, calls were made to her home, but they were unanswered. Her co-workers also made further inquiries at hospitals in the area and were told she was not a patient.

Margaret Towson expressed concern about Mrs. Ramsey's health to Norman Merrell, President Pro Tem of the Senate. After further attempts to locate Mrs. Ramsey, he contacted law enforcement personnel who went to her house. Newspapers from three prior days were outside the front entrance to the residence. There was no response to knocking on the door and ringing the doorbell. The doors and windows were locked and there was no indication of forced entry. The officers then entered the residence by removing a storm window screen and frame from a kitchen window. There was testimony that they entered believing that there could be a medical emergency inside the residence. Blood stains and other relevant discoveries were found in the house, but no one was present. Mrs. Ramsey's body was found on September 2, 1982, in an abandoned church in Callaway County, Missouri. She had died as a result of multiple blows to the head with a blunt object.

The state contends that the circumstances were sufficient to justify the search because it was reasonable for the officers to believe that someone in the house could have been in need of medical aid. It relies primarily upon *State v. Epperson,* supra. Defendant states that there are two "notable exceptions" here from the facts in *Epperson.* He says there were sufficient facts there to establish probable cause that a crime had been committed and that prior to the entry the officers had knowledge that a witness had detected "an odor in the house which ... she associated with death."

We believe that the facts here are well within the holding of *Epperson* and that defendant's attempt to distinguish it is unavailing. Suspecting a crime or smelling decaying flesh are not essential to the entry. The question is whether there was a reasonable basis to believe that a medical emergency existed. The odor of decaying flesh may even indicate that no emergency exists unless there was the possibility of more than one person in the house or an animal on the premises.

The circumstances here were sufficient to believe that a medical emergency could have existed. Mrs. Ramsey had been missing from work for several days without calling in and had failed to keep social engagements without any explanation; defendant had stated that she had high blood pressure and he was going to take her to the hospital, but she could not be located at a hospital or at home; her personal physician was unaware of any recent illness; there was no response to knocking on her door or ringing her doorbell; and three days of newspapers accumulated in front of the house. We find *Epperson* controlling and that under its rationale the entry, the search, and the seizure were proper. Point one is denied.

In his second point defendant first asserts that the instruction submitting second-degree murder, patterned after MAI–CR 2d 15.14 did not adequately submit premeditation. This contention must be denied as it has been previously resolved adverse to defendant. See *State v. Brown,* 547 S.W.2d 797, 805 (Mo. banc 1977).

For the second part of this point defendant states that the trial court erred when it sustained an objection to defendant's attorney's comment in closing argument that "there is no evidence that would support any type of finding of premeditation." "Premeditation", as used in a criminal case, means the defendant thought about what he was about to do before he did it. *State v. Dixon*, 655 S.W.2d 547, 559 (Mo.App.1983). Premeditation is not used in the instruction and the trial court might have thought the argument would be confusing to the jury. In any event, there was no prejudice to defendant as thereafter counsel was permitted to argue to the jury that to find defendant guilty of second-degree murder they had to find "that he intended to do this, he thought about, and" there "is no evidence whatsoever that, to tell us or even give us any indication of what happened." This argument made the same point and may have been clearer to the jury than the one stopped by the trial court.

Even if limiting the argument was improper at the time it was done, as defendant was able to get his point across, there was no prejudice to him. Cf. *State v. Williams*, 623 S.W.2d 552, 554 (Mo.1981). See also *State v. Darnell*, 639 S.W.2d 869, 873 (Mo.App.1982). Point two is denied.

Defendant contends in his third point that the trial court erred in allowing the prosecuting attorney to argue that the court's instructions required that the jury find the defendant not guilty of murder in the second degree before they consider whether he was guilty of manslaughter and to read to the jury the portions of the instruction which provided that if defendant is found not guilty of second-degree murder, then they must consider whether he is guilty of manslaughter.

The prosecutor stated, "If you do not find him guilty of second-degree murder, then you go to decide whether or not he is guilty of manslaughter." The portion of the instruction read by the prosecutor was the "lead-in" to the verdict directing instruction on manslaughter required by MAI-CR 2d 2.05. When given it "requires that the jury acquit the defendant of the more serious offense before it can consider the lesser included offenses." *State v. Lute*, 608 S.W.2d 381, 385 (Mo. banc 1980).

It is proper for a party to call a portion of an instruction to the attention of the jury, when what is said is a correct statement and not in conflict with any instruction. *State v. Foster*, 608 S.W.2d 476, 478 (Mo.App.1980); *State v. Reynolds*, 517 S.W.2d 182, 185 (Mo.App.1974). What the prosecuting attorney said was correct and did not conflict with the instructions. Therefore, overruling the objection was proper.

Defendant contends in his fourth point that the trial court erred in not allowing the jury to set the punishment because second-degree murder is a class A felony and § 558.016, RSMo Supp.1982, providing for extended terms for persistent and dangerous offenders, is limited to class B, C and D felonies. The amended information upon which defendant was tried stated that he was a persistent offender punishable by a sentence to an extended term under §§ 558.016 and 557.036.4, RSMo Supp.1982. Even if § 558.016 does not give the trial court authorization to sentence a defendant found guilty of a class A felony as a persistent offender, such authorization exists under § 557.036.4. *State v. Byrnes*, 619 S.W.2d 791, 792 (Mo.App.1981). This point is denied.

The judgment is affirmed.

MAUS, P.J., and HOGAN, J., concur.