STATE of Missouri, Respondent,

v.

Mark A. SCRUTCHFIELD, Appellant.

No. 38032.

Missouri Court of Appeals,
Western District.

Nov. 25, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 3, 1987.

Application for Transfer Sustained
March 17, 1987.

Case Retransferred Sept. 22, 1987.

Court of Appeals Opinion Readopted
Sept. 25, 1987.

Henry L. Graf, Kansas City, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and DIXON and TURNAGE, JJ.

GAITAN, Presiding Judge.

Defendant-appellant, Mark Scrutchfield, was convicted by a jury of the sale of a Schedule II controlled substance, in violation of § 195.020 RSMo, and sentenced as a prior offender to ten years. Defendant appeals this conviction alleging the trial court erred in the following respects: (1) By allowing the State in closing argument, over objection, to interpret the meaning of the verdict directing instruction (No. 5); (2) By permitting the State in closing argument, over objection, to misquote the evi-

dence and refer to facts not in evidence; (3) By not submitting to the jury an entrapment instruction; (4) By failing to sustain defendant's objection and motion for mistrial when the State's witness injected into evidence that he identified defendant by a mugshot; (5) By permitting the State in closing argument to state on two separate occasions that defendant vouched for witness Gomez' veracity, truthfulness and good character; (6) By not allowing defendant to treat the confidential informant as a hostile witness.

The judgment of the trial court is affirmed.

Detective Vincent Ortega, an undercover police officer assigned to the drug enforcement unit, was the State's principal witness. On October 17, 1984, between 1:45 and 2:00 p.m., Ortega received a telephone call from Anthony Gomez, a confidential informant. After talking with Gomez, Ortega and his partner, Detective Kathleen Pierce, proceeded to McDonald's Restaurant at 3741 Broadway in Kansas City. Ortega parked adjacent to a 1976 Cutlass Oldsmobile, which Gomez was driving. Ortega exited his vehicle and entered the back seat of the Cutlass. Gomez introduced Ortega to defendant as a relative. After some introductory conversation, Ortega asked defendant for Dilaudid by its street name, "pills", "the stuff" or "the D's". Defendant told Ortega he had "one fours" and "two twos". Defendant wanted $50 for the four milligram pill and $25 apiece for the two milligram pills. Ortega then handed defendant $100 and received the three pills in a white tissue.

The parties stipulated that the pills in question were Dilaudid, or Hydromorphone, a Schedule II controlled substance.

Defendant testified that about two months prior to October 17, 1984, Anthony Gomez bought four wheels from defendant. Gomez took two of the wheels and gave defendant $20.00 down. Defendant then delivered two other wheels to the bartender at the Gulf Ball Bar to give to Gomez. Gomez picked up the wheels, but did not pay defendant any of the $180 he owed for the wheels. Defendant said he kept asking Gomez for the money.

On October 17, defendant said Gomez called him and told him he could get him $100 of the money he owed; they agreed to meet at the Gulf Ball Bar. Defendant said he met Gomez there and was told they would have to go over to McDonald's to meet Gomez' brother-in-law. Defendant said Gomez told him that his brother-in-law was a body-builder and was going to pay Gomez $100 for steroids.

Gomez was called as a witness for the defense. He testified that he called defendant on October 17, 1984, and told him to meet him at McDonald's on Broadway. Defendant met him in the parking lot and got into Gomez' car on the passenger side. Defendant then placed some pills on the console of the car. Shortly thereafter, Detective Ortega arrived and Gomez introduced him to defendant as his ex-brother-in-law. Gomez saw defendant hand the pills to Ortega and saw the Ortega hand defendant $100.

The jury returned a verdict of guilty. This appeal followed.

## I.

Defendant objected to the State's closing argument contending the prosecutor improperly argued the law. The passage at issue follows:

PROSECUTOR (Ms. Starke): The Judge has given you certain instructions on the law, and Instruction Number Five is the instruction that tells you what you have to find and believe beyond a reasonable doubt to find this defendant guilty of selling hydromorphone. It tells you first, on or about October 7, 1984, in the County of Jackson, State of Missouri, the defendant sold to Detective Vince Ortega Hydromorphone. There is no question that the date was October 17th, that it was at McDonald's, here in Kansas City, Jackson County; "that the defendant sold"—it was this defendant who sold and transferred these drugs to Detective Ortega. These drugs were, in fact, hydromorphone. I don't think that there's

going to be any question among the parties about this first paragraph.

The second thing you have to find and believe is, "second"—and I'm going to read this exactly from the law—"That the defendant was aware of the nature of the substance and knew that he sold it". It doesn't say that this defendant was aware that it was, in fact, hydromorphone. It says that he was aware— ...

MS. STARKE: It says that he was aware of the character of the substance and knew that he, in fact, sold it.

So, now let's talk about the evidence in the case. What evidence have you heard that tells you that this defendant, in fact, knew the character of the substance and that he was selling it.

First of all, I think it all boils down to what happened in the car there that day. There is no question that this defendant, there was an exchange between this defendant and Detective Ortega of money and drugs. I think everyone in this case has told you that, that money was passed and drugs were passed in exchange for that money. ...

■ "It is proper for a party to call a portion of an instruction to the attention of the jury, when what is said is a correct statement and not in conflict with any instruction." *State v. Ramsey*, 665 S.W.2d 72, 75 (Mo.App.1984); *See also State v. Foster*, 608 S.W.2d 476, 478 (Mo.App.1980). The prosecutor in this case first read from the instruction. Then she correctly stated that the instruction does not state that the defendant was in fact aware that the substance was hydromorphone. The court, in response to defense counsel's objection, admonished the prosecutor to stick to the wording of the instructions. She did so, save she said "character of the substance" rather than "nature of the substance." Control of the argument of counsel rests within the discretion of the trial court "[a]nd unless the trial court abuses its discretion by permitting argument calculated either to mislead or to prejudice or to conflict with other instructions, the reviewing court will not intervene. ..." *State v. Payne*, 600 S.W.2d 94, 97 (Mo.App.1980),

citing *State v. Reynolds*, 517 S.W.2d 182, 184–85 (Mo.App.1974). There was no abuse of discretion in this case.

Defendant relies on *State v. Holzwarth*, 520 S.W.2d 17, 21–22 (Mo. banc 1975), but that case is distinguished on the facts. There a prosecutor read statutes to the jury, which were not involved in any of the instructions. Defendant's first point is without merit.

## II.

■ Defendant further objects to another portion of the State's closing argument wherein the prosecutor stated "there was discussion between Anthony Gomez and this defendant over the D's." The trial court sustained defense counsel's objection and reminded the jury that counsel's arguments are not evidence. Where a defendant receives all the relief he requested at trial, he is not entitled to a reversal of his conviction based on comments in closing argument. *See State v. Gordon*, 649 S.W. 2d 903, 906 (Mo.App.,E.D.1983). *See also, State v. Sanders*, 577 S.W.2d 186, 187 (Mo. App.1979).

■ Defendant claims that the prosecutor ignored the court's admonishment and continued to make an improper implication in her argument as follows:

MS. STARKE: There were talks between Gomez and this defendant about drugs, and these were then repeated to Detective Ortega. Why would Anthony Gomez talk to Detective Ortega about the types of drugs this defendant had been talking to him about? That's because his obligation to satisfy his deal he made was to introduce him, not to just three people off the street, to three people who met the criteria of the Police Department, and one of those things was the nature of the drugs, and Anthony Gomez had to talk to the defendant, to see if this type of person with this type of drug would be the type of person the police department would be interested in.

First, it is important to note that no objection was raised to this subsequent comment; thus the matter is not preserved. *See, State v. Jordan*, 699 S.W.2d 80, 82

(Mo.App.1985); *State v. Brown*, 611 S.W. 2d 301, 302 (Mo.App.1980). In addition, defendant failed to raise any objection to these comments in his motion for new trial, so the issue can be reviewed only for plain error. Rule 29.12(b).

■ Broad discretion rests with the trial court in controlling closing argument in criminal cases, with wide latitude accorded counsel in their summations. *State v. Newlon*, 627 S.W.2d 606, 616 (Mo. banc 1982), *cert. denied*, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982). A conviction will be reversed for improper argument only if it is established that the complained of comments had a decisive effect on the jury's determination. *Id.; State v. Murphy*, 592 S.W.2d 727, 732–33 (Mo. banc 1979).

In *Newlon*, 627 S.W.2d at 617, the court said:

> [a] prosecutor may state his conclusion if it is fairly drawn from the evidence, and his inferences need not seem necessarily warranted. Further, prosecutorial comment referring to facts not before the jury may be permissible, so long as it does not imply special knowledge of evidence pointing to defendant's guilt, and indeed the prosecutor may indicate a belief of guilt drawn directly from the State's evidence. (citations omitted).

■ Defendant claims the comments by the prosecutor were impermissible as implying knowledge of facts not in evidence. All the witnesses—including defendant—stated directly or at least inferred that defendant and the confidential informer, Anthony Gomez, talked about pills. Moreover, the complained of remarks came in the rebuttal portion of closing argument, and in response to the argument of defense counsel. In *State v. Hammond*, 578 S.W. 2d 288, 290 (Mo.App.1979), the court noted that a prosecuting attorney could go further by way of retaliation in answering the argument of defense counsel than he would be permitted to argue in the first instance. For the foregoing reasons, this point is denied.

## III.

The court refused an entrapment instruction, MAI–CR2d 3.28, offered by defendant. He claims the court erred by failing to submit this theory to the jury. In *State v. Willis*, 662 S.W.2d 252, 254 (Mo. banc 1983), the defendant argued she was entitled to an acquittal because the State failed to rebut her evidence of entrapment. The Missouri Supreme Court ruled that the trier of fact was free to disbelieve her testimony so that she had not established entrapment as a matter of law. *Id.* at 255–56. Further, in *Willis*, the defendant injected entrapment in the case because she admitted the crime but contended she had been unlawfully induced into committing the crime. In the case at bar, entrapment was never injected into the case because defendant denied committing the crime.

The court in *State v. Williams*, 542 S.W. 2d 3, 6 (Mo.App.1976), explained what is necessary for a defendant to meet his burden in injecting entrapment into a case. In that case, Williams claimed that immediately prior to his arrest a police officer came into the defendant's room and against defendant's expressed wishes left three bricks of marijuana in the room. The *Williams* court held that the defendant's entrapment instruction was properly refused. The court's reasoning is instructive to this case:

> The evidence does not support an entrapment instruction for two related reasons. First, entrapment involves a situation where the *intent* to commit the crime is placed into the perpetrator's head by the conduct of the police. It presupposes that in fact the defendant intended to commit the crime, but that that intent was the product of the police actions. Defendant's evidence was that he never formed any intent to commit the crime. He was not therefore entrapped into committing the crime. Secondly, the defense normally is inconsistent with the defendant's denial of the charge. "Possession" requires that the defendant intentionally and knowingly have the drug in his possession. Defendant's evidence was that he did not have such intentional, knowing possession. The instruction

on entrapment was properly refused. (citations omitted).

*Williams*, at 6. *See also State v. Stock,* 463 S.W.2d 889, 892 (Mo.1971);

■ Defendant does not deny that he exchanged some pills with Detective Ortega for $100 in cash. He instead claims that he did not think he was selling "drugs". He thus denies the crime for which he is charged and is not entitled to an entrapment instruction. His third point on appeal is denied.

## IV.

Defendant claims the trial court erred in failing to grant his motion for mistrial after Detective Ortega said he selected defendant's picture from driver license photographs and "mugshots". However, defendant has failed to show that the use of the term "mugshot" constituted evidence of prior criminal offenses on his part.

■ The use of the term "mugshots" does not necessarily indicate the commission of prior criminal offenses. *State v. Ross,* 680 S.W.2d 213, 218 (Mo.App.1984); *State v. McMillan,* 593 S.W.2d 629, 632 (Mo.App.1980). A defendant has the burden of showing that the use of the term constituted evidence of prior criminal offenses. *McMillan,* 593 S.W.2d at 632; *State v. Leady,* 543 S.W.2d 788, 790 (Mo. App.1976). Defendant in the case at bar, like the defendant in *McMillan* merely assumes, without proof of any sort, that the jury inferred he had a prior record because Detective Ortega used the term "mugshot". This argument cannot be sustained. *McMillan,* 593 S.W.2d at 632–33.

■ In addition, even if there had been error in the "mugshot" reference by Detective Ortega, defendant, by taking the stand and admitting, on direct examination, that he had been previously convicted of two felonies, robbery and assault, destroyed any prejudice. *McMillan,* 593 S.W.2d at 633; *See also State v. Teegarden,* 559 S.W. 2d 618, 621 (Mo.App.1977).

## V.

Defendant's fifth point stems from two references by the prosecutor to the fact that defense counsel called Anthony Gomez, the confidential informant, and therefore vouched for Gomez' veracity.

The first comment, made during closing argument, was as follows:

Now its interesting that Mr. Gomez came in and testified, and I'm glad, in a sense, that he did, and I'm glad that the defense called him because I did not want to call him as a State's witness and vouch for his credibility.

During defense counsel's closing argument, he responded to these remarks by stating, "[o]f course the Prosecutor says she's glad that I brought him in. Well, I'm glad that I brought him in because the State wasn't going to bring him in." Defense counsel later brought this up again in his closing, saying, "[o]f course the State didn't bring him in, even if he was the main actor. I brought him in, that you people might realize what occurred."

In rebuttal, the prosecutor again stated, "Why didn't the State call him as a witness? Well, I knew Mr. Graf was going to, and if Mr. Graf wanted to vouch for his credibility, that was okay."

No objection was raised to these comments at trial. "Complaints concerning the substance of closing argument call for immediate objection so that corrections may be made and appropriate cautionary instructions given. An objection made after the close of argument comes too late." *State v. Stuckey,* 680 S.W.2d 931 (Mo. banc 1984), *citing, State v. Gates,* 637 S.W.2d 280 (Mo.App.1982). We therefore review for plain error. As discussed earlier, broad discretion rests with the trial court in controlling closing argument in criminal cases, with wide latitude accorded counsel in their summations. *State v. Newlon,* 627 S.W.2d 606, 616 (Mo. banc 1982), *cert. denied* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982). A conviction will be reversed for improper argument only if it is established that the complained of comments had a decisive effect on the jury's determination.

*Id.; State v. Murphy*, 592 S.W.2d 727, 732–33 (Mo. banc 1979).

 We do not believe the comments of the prosecutor had a decisive effect on the jury. The remarks were a small part of the prosecutor's closing argument. The trial judge was in the best position to assess the impact of the remarks. *See State v. Murphy*, 592 S.W.2d 727, 732 (Mo. banc 1979).

## VI.

Defendant claims the trial court erred by not allowing him to treat the confidential informant, Gomez, as a hostile witness. Defendant's point must be denied because the trial court never made such a ruling. The last time defense counsel raised the issue was just prior to the time defense counsel began his presentation of evidence. The following exchange occurred at that time:

THE COURT: Any other motions you want to take up?

MR. GRAF: Just a motion concerning the confidential informant, Your honor. Do you want to take it up at this time or before we put him on or what?

THE COURT: You're speaking of your motion to want to treat him as a hostile witness?

MR. GRAF: Yes, Your Honor.

THE COURT: Again, the Court will not rule on that at this time. He may be the most cooperative witness in the world. We'll take it up at the time he testifies.

 Defense counsel never renewed his motion. Defendant states in his brief that when a witness "is patently biased or manifestly appears or is shown to be hostile then leading questions are allowable." First, there is no showing by defendant that Gomez was, in fact, hostile. He cites no reference to the transcript, nor did he ever make a record to show this fact. Second, there is no indication in the record that he ever attempted and was denied the opportunity to ask leading questions. Defendant's final point on appeal is denied.

The judgment of the trial court is affirmed.

All concur.