No. 81–6660. NEWLON v. MISSOURI. Sup. Ct. Mo. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is under all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments, I would vacate the judgment of the Supreme Court of Missouri insofar as it left undisturbed the death sentence imposed in this case. However, even if I believed that the death penalty could constitutionally be imposed under certain circumstances, I would grant certiorari and vacate the death sentence imposed here.

On August 4, 1978, petitioner Rayfield Newlon was indicted in St. Louis County, Mo., for capital murder. The evidence at trial was that Newlon, along with two others, Franz Williams and Walter West, agreed to rob a "convenience" store. Petitioner and Williams entered the store while West parked the car in front of the building. During the attempted robbery, the proprietor of the store, Mansfield Dave, was shot twice with a sawed-off shotgun. Newlon and Williams then ran from the store. Dave died from the gunshot wounds.

There was disputed testimony at trial as to whether Newlon or Williams fired the shots. West testified that petitioner had done the shooting, though there was considerable question whether West could possibly have seen what was happening inside the store from his position across the street. In a videotaped statement made prior to trial, Newlon said that he had gone to the back of the store to get a soda and to divert Dave's attention, and that while he was there, Williams had fired the shots. Newlon testified at trial and again denied responsibility for the shooting.

In his argument on summation, the prosecutor stressed that even if Newlon did not fire the shots, he was still guilty of capital murder as an accomplice of Williams. The trial judge instructed the jury as follows with respect to the elements of capital murder:

> "If you find and believe from the evidence beyond a reasonable doubt:
>
> "First, that on or about April 24, 1978, in the County of St. Louis, State of Missouri, the defendant *or another* caused the death of Mansfield Dave by shooting him, and
>
> "Second, that the defendant *or another* intended to take the life of Mansfield Dave, and
>
> "Third, that the defendant *or another* knew they were practically certain to cause the death of Mansfield Dave, and
>
> "Fourth, that the defendant *or another* considered taking the life of Mansfield Dave and reflected upon this matter coolly and fully before doing so, and
>
> "Fifth, that the defendant acted either alone or knowingly and with common purpose together with another in the conduct referred to in the above paragraphs, then you will find the defendant guilty of capital murder."
> (Emphasis added.)

The jury returned a guilty verdict.

A separate sentencing hearing was then held before the same jury. Under Missouri law the death penalty may be imposed for capital murder if the trier of fact finds aggravating circumstances that warrant the imposition of death and the absence of sufficient countervailing mitigating circumstances. Mo. Rev. Stat. § 565.012 (1978). In this case the jury was instructed to consider two aggravating circumstances alleged by the prosecution. First, it was instructed to decide whether petitioner murdered Mansfield Dave for the purpose of receiving money. Second, it was instructed to decide whether the murder involved "depravity of mind and . . . as a result thereof . . . was outrageously or wantonly

horrible or inhuman." See § 565.012(2)(7). The jury found the second alleged aggravating circumstance to be applicable and imposed the death sentence. On appeal the Missouri Supreme Court affirmed, with two judges dissenting. 627 S. W. 2d 606 (1982).

Even accepting, *arguendo*, the prevailing view that there are circumstances in which the death sentence may constitutionally be imposed, I would grant certiorari and set aside the sentence imposed in this case. First, the Missouri Supreme Court's decision is inconsistent with this Court's decision last Term in *Enmund* v. *Florida*, 458 U. S. 782 (1982). *Enmund* established that a State may not punish by death one "who neither took life, attempted to take life, nor intended to take life." *Id.*, at 787. The Court observed:

> "For purposes of imposing the death penalty, Enmund's criminal culpability must be limited to his participation in the robbery, and his punishment must be tailored to his personal responsibility and moral guilt. Putting Enmund to death to avenge two killings that he did not commit and had no intention of committing or causing does not measurably contribute to the retributive end of ensuring that the criminal gets his just deserts." *Id.*, at 801.

We concluded that death is a disproportionate penalty for one who neither killed nor intended to kill.

The instructions in the guilt phase of petitioner's trial were impermissible under *Enmund*. A reasonable juror might have understood from the instructions that petitioner could be found guilty of capital murder even if he neither killed Dave nor intended to kill him. The instructions told the jury that it could find petitioner guilty *as an accomplice* if it found that Williams killed Dave with the requisite intent and that petitioner knowingly assisted Williams in the attempted robbery. Given the conflict in the evidence as to who fired the shots, it is not unlikely that the jury's verdict was in fact premised on a finding that petitioner acted as Williams' ac-

complice. In any event, since the jury's guilty verdict may have been based solely on the theory of accomplice liability, and since such liability does not provide a constitutionally sufficient basis for the death penalty, petitioner's death sentence must be set aside. See, e. g., *Stromberg* v. *California*, 283 U. S. 359, 367–368 (1931). At the very least, the judgment upholding the sentence should be vacated and remanded for reconsideration in light of our decision in *Enmund*, which was announced five months after the Missouri Supreme Court's decision in the instant case.

Even if the trial judge had properly charged in the guilt phase of the trial that petitioner could be convicted as an accomplice only if he intended to take life, imposition of the death sentence would still have been improper because the instructions in the punishment phase of the trial permitted the jury to impose the death sentence solely on the basis of the conduct and mental state of the principal. The sole aggravating circumstance found by the jury—that the murder involved "depravity of mind and . . . as a result thereof . . . was outrageously or wantonly horrible or inhuman"—did not include a finding that *petitioner's* conduct involved "depravity of mind." The jury was required to find only that the murder itself involved "depravity of mind." It is irrational to sentence an accomplice to death on the ground that the principal's conduct evidenced "depravity of mind." The State must prove that the accomplice himself deserves the death penalty, and it cannot do so simply by attributing to him the conduct and mental state of the principal. "[P]unishment must be tailored to [the defendant's] personal responsibility and moral guilt." *Enmund* v. *Florida, supra,* at 801. Because the jury did not find that petitioner's actions demonstrated that he was more culpable than any other murderer, "[t]here is no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Godfrey* v. *Georgia*, 446 U. S. 420, 433 (1980) (plurality opinion).

Petitioner's death sentence should also be set aside because the sentencing standards applied in this case completely failed to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Godfrey* v. *Georgia,* 446 U. S., at 428 (footnotes omitted). The jury in *Godfrey* was instructed, in the terms of the Georgia statute, that it could impose the death sentence if it found that the offense was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." *Id.,* at 422. A plurality of this Court held that the discretion of the sentencer has to be narrowed when it is instructed to consider this alleged aggravating circumstance, since "[a] person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'" *Id.,* at 428–429. The plurality recognized that "[t]here is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence." *Id.,* at 428. Since the jury in *Godfrey* had not been given any narrowing construction of the open-ended statutory language, the plurality concluded that the death sentence had to be vacated.

The death sentence imposed here must be vacated for the same reason. The aggravating circumstance found applicable by the jury here—that the murder "involved depravity of mind and . . . as a result thereof . . . was outrageously or wantonly horrible or inhuman"—is almost identical to that found applicable by the jury in *Godfrey.* Here, as in *Godfrey,* the sentencer was not provided with any narrowing construction of the statute to channel its discretion; the judge "gave the jury no guidance concerning the meaning of any of [the statute's] terms," *id.,* at 429, and indeed refused a request by the jury for an explanation of the statutory language. As a result, the decision whether the

defendant would live or die was similarly left to "the uncontrolled discretion of a basically uninstructed jury." *Ibid.*

The Missouri Supreme Court made an unconvincing attempt to distinguish *Godfrey* on the ground that that decision "rests on its unique facts." 627 S. W. 2d, at 621. The court explained at some length why, in its view, Newlon's conduct was more culpable than Godfrey's. *Id.*, at 621–622. This distinction of *Godfrey* clearly cannot withstand scrutiny. As the plurality stated in *Godfrey*, a State must "define the crimes for which death may be the sentence in a way that obviates 'standardless [sentencing] discretion.'" 446 U. S., at 428, quoting *Gregg* v. *Georgia*, 428 U. S. 153, 196, n. 47 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.) (brackets supplied in *Godfrey*). It is the discretion of the *sentencer* that must be channeled. In capital murder cases in the State of Missouri, only the trier of fact may impose a sentence of death; if the trier of fact imposes a life sentence or cannot agree on the appropriate sentence, the death penalty may not be imposed. Mo. Rev. Stat. § 565.006(2) (1978). Since under Missouri law the trier of fact is the sentencer, it is the discretion of the trier of fact—in this case, the jury—that must be channeled. The impermissibly vague and broad instructions given to the jury here cannot be cured by distinctions drawn by the Missouri Supreme Court on appeal. Nothing that the Missouri Supreme Court can say about its own view of the record can change the fact that the critical sentencing decision was left to "the uncontrolled discretion of a basically uninstructed jury." *Godfrey* v. *Georgia, supra,* at 429. See *Zant* v. *Stephens*, 456 U. S. 410, 424–428 (1982) (MARSHALL, J., dissenting); *Brooks* v. *Georgia*, 451 U. S. 921 (1981) (MARSHALL, J., dissenting from denial of certiorari); *Godfrey* v. *Georgia, supra,* at 436–437 (MARSHALL, J., concurring in judgment).

Finally, I would grant certiorari and vacate the death sentence on the additional ground that the prosecutor's improper arguments to the jury denied petitioner a fair sentencing pro-

ceeding. The prosecutor's arguments at the sentencing proceeding dealt only briefly with the facts of the case as they related to the aggravating and mitigating circumstances submitted to the jury. As Judge Seiler set forth in greater detail in his dissenting opinion below, 627 S. W. 2d, at 633–634, the thrust of the prosecutor's remarks concerned wholly extraneous matters. For example, the prosecutor argued that the death penalty should be imposed on petitioner because there was no one on death row in Missouri;[1] because the jury would be cowardly if it imposed the lesser sentence of life without parole for 50 years;[2] and because anything but a death sentence was forever subject to change.[3] The prosecutor also suggested to the jury that the death penalty was appropriate solely because the defendant had been convicted of capital murder;[4] and that the availability of post-trial procedures relieved the jury of the full responsibility for its decision.[5]

This Court's decisions speak of the "'vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.'" *Beck* v. *Alabama*, 447 U. S. 625, 637–638 (1980), quoting *Gardner* v. *Florida*, 430 U. S. 349, 357–358 (1977) (opinion of STEVENS, J.). The Court has also emphasized that juries may not be given

---

[1] "Do you know how many people are on death row in this State? None. We've got the death penalty, but how many are there? None. Mr. Newlon will be the first one, if you put him on death row."

[2] "As sure as he sits there, he doesn't think you have the guts to do it. . . . Once again, I hope you have the courage to do that because it's tough."

[3] "[W]hat assurances do you have that he'll be there fifty years? The legislature could change the law. All it says is no parole. It doesn't say it can't be commuted. There's no assurance of that at all."

[4] "[I]f somebody is guilty of capital murder, the ultimate crime, why should they get anything other than death?"

[5] "Now, if you say he deserves the death penalty, under the law, Judge Ruddy must review it and if he agrees, then his decision is reviewed by the Supreme Court."

standardless discretion to impose capital sentences. See, *e. g., Woodson* v. *North Carolina,* 428 U. S. 280, 302 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.). In this case the trial judge allowed the prosecutor to exhort the jury to depart from the statutory sentencing standards and to impose the death sentence based on entirely improper considerations. I believe the prosecutor's remarks, which invited an unreasoned imposition of the death sentence, so far exceeded the bounds of proper argument as to deprive petitioner of the fair sentencing proceeding guaranteed by the Eighth and Fourteenth Amendments. Cf. *Donnelly* v. *DeChristoforo,* 416 U. S. 637, 645 (1974) (suggesting that prosecutorial remarks in closing argument may be sufficiently prejudicial to deprive the defendant of his constitutional right to a fair trial).

For these reasons, I dissent from the denial of certiorari.