Rayfield NEWLON, Plaintiff-Appellant,

v.

STATE of Missouri,
Defendant-Respondent.

No. 49216.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 21, 1986.

Motion for Rehearing and/or Transfer
Denied Feb. 25, 1986.

Application to Transfer Denied
March 25, 1986.

Richard H. Sindel, Clayton, for plaintiff-appellant.

John M. Morris, Asst. Atty. Gen., Victorine Robben Mahon, Jefferson City, for defendant-respondent.

REINHARD, Judge.

Movant appeals from the denial of his Rule 27.26 motion after an evidentiary hearing. We affirm.

Movant was convicted of capital murder after a jury trial and sentenced to death. His conviction was affirmed on direct appeal by the Missouri Supreme Court in *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982), which contains a discussion of the murder. Movant's second amended 27.26 motion contains numerous allegations of constitutional infirmities in regard to his sentence which we catagorize as follows: 1) allegations pertaining to the jury selection process and the Missouri death penalty statute; 2) allegations concerning the state's argument during the sentencing phase of the trial; 3) allegations regarding the jury instructions on aggravating and mitigating circumstances; and 4) allegations of ineffective assistance of counsel at trial. After a hearing, at which movant did not testify, the hearing court denied the 27.26 motion. Movant raises twelve points on appeal, which will be enumerated as appropriate in the discussion.

Movant's first contention is that the trial court erred in striking for cause prospective jurors "on the basis of their answers to questions concerning their religious and/or moral beliefs against the imposition of the death penalty" because their responses were equivocal and because the prosecuting attorney's voir dire questions on those subjects were "confusing, misleading, and incorrect statements of law." Movant's allegations specifically focus on venirewoman Daily and venireman Schlattman. We initially note that similar complaints were made on direct appeal, where the responses of three veniremen, including Mrs. Daily, were examined by the Supreme Court and found to be unambiguous. We will not reconsider contentions rejected in the original appeal in this post-conviction proceeding under Rule 27.26. *Hatfield v. State,* 487 S.W.2d 574, 575 (Mo.1972). Although venireman Schlattman's excusal was not challenged on direct appeal, he clearly stated he could not follow the court's instructions on the range of punishment if the death penalty were included. The trial court's ruling was therefore consistent with *Wainwright v. Witt,* —— U.S. ——, ——, 105 S.Ct. 844, 851–852, 83 L.Ed.2d 841, 852 (1985). In addition, our examination of the record has disclosed no basis for relief in the prosecuting attorney's voir dire examination. Movant's Point I is without merit.

In Point II movant contends that the hearing court "erred in rejecting consideration of [movant's] claim that the imposition of the death penalty on the [movant] is cruel and unusual punishment forbidden by the Eighth Amendment to the Constitution of the United States ... and further deprives him of due process of law ..." These same contentions were raised by movant on direct appeal and were rejected by the Missouri Supreme Court in *State v. Newlon*, 627 S.W.2d at 606.

Points III and IV raise allegations of misconduct concerning the prosecuting attorney's argument during the trial's penalty phase. The Missouri Supreme Court considered the remarks complained of on direct appeal, reviewing them under the plain error doctrine. *Id.* at 616–620. After setting forth the portions of argument movant objects to, the Court determined that no plain error had been committed by the trial court in failing to declare a mistrial; and an examination of the Court's opinion, as well as its analysis of movant's allegations, reveals that no error whatsoever was divined. The prosecutor's argument did not deprive movant of a fundamentally fair trial.

We next consider Points VI, VII, and VIII, which concern rulings regarding the testimony of two witnesses called by movant at the motion hearing: Father John Kavanaugh and Dr. James Gilsanin. Movant sought to introduce testimony from Father Kavanaugh concerning the Bible's prohibition against capital punishment and the American Catholic Bishops' objection to the death penalty. The hearing court found this testimony irrelevant. Dr. Gilsanin, a Professor of Urban Affairs at St. Louis University, testified, *inter alia*, about the deterrent effect of the death penalty. The hearing court sustained the state's objection to testimony based upon studies not available at the time of movant's murder trial. The court later found that the portion of Dr. Gilsanin's testimony regarding the death penalty's deterrent value was irrelevant. We find no error in the hearing court's rulings on the testimo-

ny of these two witnesses. Had that testimony been offered and excluded at the penalty phase, the trial court would not have committed error. In *State v. Gilmore*, 681 S.W.2d 934 (Mo. banc 1984), Gilmore contended that he was unable to adequately prepare a defense due to the trial court's refusal to appropriate funds for witnesses, including Dr. Gilsanin. The Court found no error, stating:

> The only witness specifically identified was Dr. James Gilsanin, a professor of sociology, who was to testify as to the deterrent value of the death penalty. It is aphoristic that the sentencing phase of the trial is not designed to serve as a forum for a general debate on the attributes of capital punishment. The bifurcated procedure was devised to avoid the imposition of the death sentence in an arbitrary and capricious manner. *However, it is apparent from defendant's motion that Dr. Gilsanin's testimony would not have focused upon the specifics of the defendant's case and, therefore, would not have assisted the jury in imposing a rational sentence.*
>
> This Court has recognized that the death penalty serves the legitimate purposes of retribution and incapacitation, and the legislature may find that the penalty serves the purpose of deterrence. Therefore, the trial court's decision to refuse funds for the employment of an expert witness, whose testimony was irrelevant to the issue at hand, was not erroneous. The fact that another trial court might have been more gratuitous in Leonard Laws' case in permitting the presentation of Dr. Gilsanin's testimony does not make the trial court's ruling error in this instance. (citations omitted) (emphasis ours).

*Id.* at 941. Neither the testimony of Father Kavanaugh nor that of Dr. Gilsanin would have focused on the specifics of this case, and therefore would have been irrelevant. Having discerned no error, we need not rule on the state's claim that errors or defects in Rule 27.26 proceedings present no reviewable issue under Missouri law.

*See, State v. Brown,* 633 S.W.2d 301 (Mo. App.1982).

In Point IX movant contends that "the court erred in rejecting Dr. Gilsanin's testimony concerning studies which have concluded that persons who are death qualified pursuant to *Witherspoon v. Illinois* [391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)] are more likely to find defendants guilty of capital crimes than persons who are not so qualified." In Point X, movant alleges that the hearing court erred in rejecting movant's claim that his jury was guilt prone and unrepresentative of the community. Movant relies on *Grigsby v. Mabry,* 758 F.2d 226 (8th Cir.1985), *cert. granted sub nom. Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985), to support these contentions. However, we are bound by the long line of Missouri Supreme Court decisions contrary to movant's position. *See, e.g., State v. Bannister,* 680 S.W.2d 141, 146 (Mo. banc 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). Movant's Points IX and X are clearly without merit.

Points XI and XII present allegations concerning the instructions submitted to the jury on aggravating and mitigating circumstances. Movant simply attempts to relitigate issues regarding the aggravating circumstances instruction. We will not consider those contentions in this proceeding. *Hatfield,* 487 S.W.2d at 575. In Point XI, however, movant raises a challenge to the mitigating circumstances instruction which was not addressed on direct appeal.

The challenged instruction, No. 21, reads as follows:

If you decide that a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death, as submitted in Instruction No. 20, it will then become your duty to determine whether a sufficient mitigating circumstance or circumstances exist which outweigh such aggravating circumstance or circumstances so found to exist. *In deciding that question you may consider* all of the evidence relating to the murder of Mansfield Dave.

You may *also* consider,

1. Whether the defendant was an accomplice in the murder of Mansfield Dave and whether his participation was relatively minor.

2. Whether the defendant acted under extreme duress or substantial domination of another person.

3. The age of the defendant at the time of the offense.

If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence. (emphasis ours).

Movant contends that this instruction improperly limited the jury's consideration of mitigating circumstances.

We initially note that instructional error is ordinarily not a matter to be reviewed under Rule 27.26. *Cherry v. State,* 660 S.W.2d 361, 363 (Mo.App.1983). However, we find no error in the challenged instruction which could perceivably have prejudiced movant. The emphasized portion of the instruction indicates that it does not violate the U.S. Supreme Court's mandate that the sentencer "not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973, 990 (1978). The jury was instructed to consider *all* the evidence in balancing mitigating and aggravating circumstances. Furthermore, the jury was also instructed that they were not compelled to fix death as the punishment, "even if [they] decide that a sufficient mitigating circumstance or circumstances do

not exist." Movant's Points XI and XII are also without merit.

We perceive movant's principal allegation to be that he received ineffective assistance of counsel at trial, as set forth in Point V of his brief.

It appears that movant has no real complaint regarding counsel's performance during the guilt phase of the trial. In his brief he states:

> Clearly, there was a discrepancy between Mr. Ayers' ability to handle the penalty phase of this case and the manner in which he tried the guilt portion. Counsel's total lack of investigation, initiative, conceptualization, and witness preparation and consultation concerning strategies to be employed at the penalty phase, are glaring failures as compared to his shortcomings during the guilt phase.[1]

He contends that "investigation on the part of defense counsel would have revealed the availability of evidence and witnesses who could have demonstrated to the jury factors that would substantially effect (sic) their decision in imposing the penalty of death."

Defense counsel testified at the 27.26 hearing that he was licensed to practice law in 1974, and served as Stoddard County Prosecuting Attorney from January 1975 until November 1977, during which time he tried 50 to 60 cases. He also worked briefly for the Cape Girardeau Prosecuting Attorney's Office, and in January 1978 entered into a general private practice in St. Louis County.

Defendant's trial, in July 1979, was only the second or third capital murder trial in Missouri under the new statute providing for bifurcated proceedings. Counsel testified that he took measures to familiarize himself with the new law, including observing the penalty phase of the murder trial in *State v. Downs*, 593 S.W.2d 535 (Mo.1980) at which no additional evidence was adduced by either side during the penalty phase. He also consulted with another attorney who had substantial criminal law experience and obtained information from the A.C.L.U. regarding capital murder trials. In addition to these measures, counsel engaged an investigator to assist him in locating witnesses and formulating a defense. Counsel requested that movant provide him with a list of possible witnesses, and testified that he followed up on all leads.

At the penalty phase of movant's trial, counsel focused in his argument on two mitigating factors: movant's youth and his allegedly minor participation in the crime. The murder victim died of shotgun wounds inflicted upon him during a robbery. The evidence indicated that movant and two other men were involved in the crime. However, counsel tried to impress upon the jury perceived weaknesses in the testimony which indicated that movant was the "trigger man" and attacked the credibility of the state's witnesses. Counsel testified that he felt this strategy would be effective, noting that the jury had deliberated for 7–8 hours on the question of guilt. Neither the state nor defense counsel called witnesses during the penalty phase. Counsel said that movant had presented him with three different versions of the crime, and "didn't help himself at all" during his testimony at the guilt phase. Counsel did consider calling the prison employees who are responsible for implementing the death sentence, but rejected this idea because "the only thing they could tell the jury was about death."

Movant contends that several witnesses should have testified during the penalty phase, including his mother, a sister, an

---

1. We also note that movant told his attorney in the court's presence, while waiting for the jury to return a verdict on the sentence, that:

> I am completely satisfied and feel that you represented me to your utmost. I felt even if I had paid an attorney I couldn't have gotten a better job, than the job you have done, and I am completely satisfied. You have helped me prove my innocence,—and until such time I can have my Motion for New Trial to prove my innocence. I have been satisfied with you representing me, and I would like to have you as my Defense Attorney on my Motion for New Trial, if that is in any way possible?

aunt, a neighbor, a former girlfriend, a former teacher and a former police officer.[2] These witnesses testified at the 27.26 hearing that they could have told the jury about movant's impoverished background, his mental "slowness" and that movant was basically a "follower." Counsel endorsed one of these witnesses, Helen Tillman, who was movant's aunt and a close friend of the family. However, he stated that Mrs. Tillman was uncooperative and refused to testify at the trial.

Most of these witnesses had no information regarding the crime, and indeed their testimony indicates that their knowledge of movant was incomplete. For example, only two witnesses were aware of movant's prior convictions. In addition, all had connections with movant that could indicate bias, and their testimony was somewhat inconsistant.[3]

In order for movant to prevail, he must demonstrate that counsel "fail[ed] to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and that he was prejudiced thereby." *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979). Furthermore, "[w]hen a defendant challenges a death sentence ... the question is whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balancing of aggravating and mitigating circumstances did not warrant death." *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 694 (1984). In determining the effectiveness of counsel in this case, the recent vintage of the capital murder statute is a factor to be considered. In *Foster v. Strickland*, 517 F.Supp. 597, 604–605 (N.D.Fla.1981) the court noted that "... the totality of the circumstances included a new [death penalty] statute." The court further observed that:

2. John Parker, the former police officer, testified at the guilt phase of the trial, but was not called during the penalty stage.

3. For example, Janet Bradford, a former girlfriend, testified that she had seen movant be-

Another lawyer may have done it differently. Another lawyer may have done it better. Another lawyer may have done it worse. But [counsel] was not ineffective.

*Id.* at 605.

 Here counsel followed a procedure he believed would be effective. The fact that some other attorney might have presented the evidence now proposed by movant does not make counsel's failure to do so a breach of his duty to render competent assistance. We also are not convinced that the introduction of such evidence would have produced a different result.

Under the circumstances, we cannot conclude that movant was deprived of effective assistance of counsel.

Judgment affirmed.

DOWD, P.J., and CRIST, J., concur.

have violently and said that he knew how to "take care of himself." Mrs. Tillman testified that movant's mother refused to admit that her children got into trouble.