**STATE of Missouri, Respondent,**

v.

**Raphael CLARK, Appellant.**

No. 48584.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 20, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 19, 1986.

Application to Transfer Denied
July 15, 1986.

**930**

Henry B. Robertson, Public Defender, St. Louis, for appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Presiding Judge.

Defendant, Raphael Clark, was convicted by a jury of capital murder, § 565.001, RSMo 1978, (now repealed) for the death of Gary Decker and sentenced to life imprisonment without probation or parole for at least fifty (50) years. He appeals from his conviction and sentence, urging numerous grounds for reversal. We affirm.

We review the evidence in the light most favorable to the verdict. On the evening of December 14, 1982, Donna and Gary (victim) Decker had completed shopping at Grandpa Pigeons in Bellefontaine Neighbors and were headed toward their blue Nova parked on the store's parking lot around 9:15 to 9:30 p.m. The Deckers were approached outside their car by defendant and Walter Harvey.

A witness testified that at approximately 9:15 to 9:20 p.m. on that evening he heard a white woman say, "Why don't you take my" and "I don't want you to hurt me." A black man standing outside the car told her to keep her mouth shut. The witness saw one black man and one white man in the back seat of the car. The other black man got in the front seat and drove. The woman was seated in the front seat.

Before leaving the parking lot of Grandpa Pidgeons, Gary Decker, who was seated in the back seat of the car, had been shot in the chest. The bullet pierced his heart. He died almost instantly.

Walter Harvey drove the Decker car with the Deckers and the defendant north toward interstate highway 270. At approximately 10:05 p.m., Vandy Brewer was driving home from work. Brewer testified that while she was stopped at a red light in downtown St. Louis, she smiled at a woman in a car stopped next to her car at the traffic light, but the woman did not smile back. Brewer saw a black man seated next to a pale white man in the back seat of the car. The white man was sitting very erect and was not moving.

The defendant moved to the driver's seat after realizing that Gary Decker was dead. The defendant proceeded to drive the car

onto the Poplar Street bridge toward Illinois. Debra Geiger saw the Decker car parked in her lane on the bridge and heard something like a car backfiring twice. Geiger pulled up next to the Decker car. Mrs. Decker looked at Geiger in terror and the defendant grinned at Geiger revealing his front gold tooth.

The defendant proceeded to drive across the Poplar Street bridge into Illinois stopping somewhere near Alton and the Southern Railroad tracks. In an open field, Donna Decker was shot four times in the face and head from a gun fired at close range. Defendant and Harvey left the bodies of Gary and Donna Decker on an open field. The bodies were found the next day by a railroad policeman.

Defendant contends that the trial court committed error in finding that the defendant's statements were tacit admissions and were improperly admitted into evidence. Defendant contends that his statements did not adopt Walter Harvey's statements and that Harvey's statements to the Gilliehams were not sufficiently accusatory that defendant would be required to deny the statements.

■ When a statement which tends to incriminate one accused of committing a crime is made in the presence of the accused and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny this statement are admissible in a criminal prosecution against him as evidence of his acquiescence in its truth—that is, as a tacit admission of the facts stated—or as indicative of a consciousness of guilt. *State v. Samuel*, 521 S.W.2d 374, 375 (Mo. banc 1975). The Missouri tacit admission rule requires that (1) the statement is made in the presence and hearing of the accused, (2) the statement is sufficiently direct as naturally would call for a reply, and (3) the statement must not be made at a judicial proceeding or while the accused was in custody or under arrest. *State v. Samuel, supra*, at 375. *State v. Rogers*, 573 S.W.2d 710 (Mo.App.1978).

■ The evidence shows that shortly after the Decker murders defendant and Walter Harvey were confronted by their friends, Cedric and Farland Gillieham. Harvey talked about the Decker murders to the Gilliehams in the presence of the defendant. Cedric Gillieham testified:

A [Cedric Gillieham] I asked them if they killed them people, and there was no reply. I said, what did you all get out of it, because this was the same car. And Walter kept saying—

\* \* \* \* \* \*

A I said, did you all get anything out of it, and Ray said, let it die, and Walter said, are you going to let this come between friendship, and I said, why did you all have to kill and shoot the people, and he said, the only reason I shot the person, he tried to play hero on the lot.

\* \* \* \* \* \*

Q (By Mr. Goldman) Did Ray[1] say anything?

A He just kept saying, let it be, let it die under.

Q Did Walter say anything?

A My little brother was teasing and saying, I am going to turn you in. Ray said, no, you ain't, and Raphael said, no, you ain't, I know you ain't.

The prosecutor then asked Farland Gillieham about what had transpired:

A [Farland Gillieham] Cedric was asking what happened and asked what Ray was doing. Walter was doing the talking. Cedric said what happened and he said, why did you all do something like that, and he said, it would never happen if the man didn't try to play hero, take the gun from Ray.

Q (By Mr. Goldman) Go on.

A And then he said, he said, it would have never happened if they didn't try to take the gun from Ray. They was just going there to rob somebody.

\* \* \* \* \* \*

---

1. Reference to Ray during trial was a reference to Raphael Clark, defendant.

**932**

A He said they went to Grandpa's to rob somebody, they was wrestling over the gun. Walter was in the front, driver's side, Ray was in the back, and the man was in the back, and he tried to take the gun and the gun went off and Ray was going to drive.

Q (By Mr. Goldman) Was Ray saying any of this?

A No.

Q What was he saying?

A He told Cedric, why don't you just let it die, and Cedric said, how could you do something like this?

Q Did they say why there [sic] were going to rob the people?

MR. ANZALONE: I object to that. It is leading.

THE COURT: Sustained.

Q (By Mr. Goldman) Go on.

A He said they was going to kill them. "We was going to rob them and kill them."

Q Who said that?

A Walter.

Q Raphael Clark was right there?

A Yes."

We find the statements made by Walter Harvey to Cedric and Farland Gillieham in the presence of the defendant were properly admitted into evidence under the tacit admission rule. The statements made by Walter Harvey to the Gilliehams in the presence of defendant directly implicated the defendant in the murder and were such that a denial of guilt or an exculpatory reply was required. We will infer that defendant adopted the statements made by Harvey to the Gilliehams as a tacit admission of his guilt. Defendant's first point is denied.

Secondly, defendant alleges the trial court erred when it allowed the prosecutor to elicit from the defendant's sister on cross examination that defendant had a child by an unmarried woman who lived in the vicinity of Grandpa Pidgeons. Defendant contends that the prosecution was attacking the defendant's character by implying that defendant was immoral and irre-

sponsible in his sexual and parental relations. We disagree.

A trial judge has wide latitude in ruling on whether to admit or exclude evidence adduced by the parties at trial. The trial judge has discretion to determine the materiality and relevancy of evidence offered. The relevancy depends upon whether it tends to prove or disprove a fact in issue or to corroborate evidence which is relevant and which bears on the principal issue. Absent clear abuse, an appellate court will not interfere with the trial court's ruling on the admission or exclusion of evidence. *State v. Harlston,* 565 S.W.2d 773, 782 (Mo.App.1978).

In the case before us, the prosecutor did elicit from defendant's sister that the defendant had a two year old daughter by a woman who lived in the area of Grandpa Pigeons. The prosecution argues that this evidence was elicited to show the defendant's familiarity with the area and a possible motive for the crime. Under the facts of this case, there was no abuse of discretion in permitting this testimony. Defendant's second point is denied.

Defendant alleges the trial court erred in overruling defendant's objection to the prosecutor's closing argument which drew an adverse inference from defendant's failure to call his mother as a witness.

The trial court has considerable discretion allowing or rejecting argument of counsel, and its rulings are reversible only for an abuse of discretion where the argument is plainly unwarranted. *State v. Moore,* 620 S.W.2d 370, 373 (Mo. banc 1981). A prosecuting attorney may properly argue an adverse inference from a defendant's failure to produce a witness who would be reasonably expected to give testimony in the defendant's favor. *State v. Webster,* 659 S.W.2d 286, 288 (Mo.App. 1983). An adverse inference may not be argued if the witness is equally available to the defendant and the state. The courts have determined that equally available relates to the susceptibility to process and involves three factors: (1) whether one par-

ty has superior ability to know or identify the witness, (2) the nature of the testimony the witness is expected to give, and (3) the relationship between the particular party and the witness which indicates that the witness would be likely to testify more favorably for one party than another. *State v. Webster, supra,* at 288.

This court has held that a sister of a defendant would be expected to give favorable testimony on a defendant's behalf and additionally, a sister would be more available as a witness to a defendant than the state. *State v. Sanders,* 619 S.W.2d 344, 348 (Mo.App.1981).

■ The case before us involves an alibi defense whereby defendant charges that he was at home, where he lived with his mother, at the time of the Decker murders. Both of the defendant's sisters testified at trial regarding defendant's alibi, however their testimony was conflicting. We believe the trial court did not err when it allowed the prosecutor to draw an adverse inference from defendant's failure to call his mother as a witness. Defendant's third point on appeal is denied.

Defendant asserts that the trial court erred when it admitted into evidence a statement made by witness Voss to police officers because the statement had no relevance to the prior inconsistent statement used to impeach witness Voss.

Witness Voss testified on direct examination for the state that he and the defendant drank rum and beer on the school yard grounds during the first week of January 1982. It was here that defendant discussed the details of the Decker murders to Voss. On cross-examination, the defense impeached Voss with a prior inconsistent statement made by Voss during the defendant's federal trial. Voss testified at the federal trial that he and defendant consumed rum and beer and smoked marijuana on the play ground. The prosecutor then, in an attempt to rehabilitate Voss, read into evidence a prior statement made by Voss to police which set forth the details of the defendant's discussion with Voss about the Decker murders.

He said that they stood out in front of Grandpa Pidgeon's, they saw the victims going, after they came out, Walter Harvey harassed the lady and told her to go to the car, don't make no sounds. She went to the car and her husband got in the car, and she got in the car. After they got in the car, Walter got in the car and Ray got in the car. After they all got in the car they rode on for a while and Ray and, you know, Mr. Decker got to tussling in the back seat, and that Ray said that the gun went off and I guess he shot him in the stomach somewhere, you know, and I say about two or three minutes after then he died and then Ray hollered, hey Walter, he dead.

■ A prior inconsistent statement introduced to impeach a witness may be rebutted by the introduction of a prior consistent statement to rehabilitate the witness. The prior consistent statement can be used only to the extent necessary to counter the subject on which the defendant was impeached. Therefore, evidence on a subject matter foreign to that on which the defendant is impeached is incompetent and inadmissible. *State v. Renner,* 675 S.W.2d 463, 466 (Mo.App.1984).

■ If the reading of a statement for the purpose of rehabilitation is error, the question becomes whether the defendant suffered prejudice as a result of the admission of the statement into evidence.

■ The case before us is like *State v. Haggard,* 619 S.W.2d 44, 48 (Mo. banc 1981), *cert. denied* 455 U.S. 930, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982), vacated on other grounds, 459 U.S. 1192, 103 S.Ct. 1171, 75 L.Ed.2d 423 (1983), where the Supreme Court held that the reading of a statement to rehabilitate a witness which was not confined to the subject matter of impeachment, although improper, was harmless error because the statement was identical to the witness' in court testimony. Additionally, the court noted there was strong evidence of the defendant's guilt presented to the jury. *State v. Haggard, supra,* at 48.

We find that although the statement read into evidence was not confined to the subject matter of impeachment, its admission into evidence was harmless under *State v. Haggard* and does not call for a reversal or a new trial. Defendant's fourth point is denied.

Defendant's fifth point on appeal challenges the trial court's ruling which allowed into evidence the condition of Donna Decker's body and the cause of her death because it was irrelevant to the crime with which defendant was charged—the murder of Gary Decker.

It is well established that evidence of separate unrelated crimes is not admissible unless the evidence of the separate crime establishes the defendant's guilt of the charge for which he is on trial. Thus, evidence of a separate crime is admissible where it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial. *State v. Trimble,* 638 S.W.2d 726, 732, (Mo. banc 1982). Evidence which covers the commission of another offense is admissible when two or more crimes are so linked together in point of time or circumstance that one cannot be fully shown without proving the other. *State v. Gillespie,* 336 S.W.2d 677, 682 (Mo.1960).

We do not find the trial court abused its discretion. The evidence of the condition of Donna Decker's body and the cause of her death was probative of the fact that Gary Decker's death was not caused by accident and helped to establish the existence of a common scheme which embraced the series of offenses against the Deckers. Defendant's fifth point is denied.

In his sixth allegation of error, defendant contends the trial court erred by permitting the prosecutor to enter a nolle prosequi on count II, the alternative charge of murder first degree, at the close of all the evidence. Defendant contends the entrance

of the nolle prosequi was oppressive and was a prejudicial abuse of the prosecutor's power because it deprived the defendant of a viable theory under which he tried the case.

Defendant was charged in alternative counts with capital murder or first degree murder for the shooting death of Gary Decker. After the close of the evidence and before closing argument, the prosecuting attorney entered a memorandum of a nolle prosequi as to count II, the first degree murder charge.

A nolle prosequi is a formal entry on the record by the prosecutor that he will no longer prosecute a pending criminal charge. *State v. Lawson,* 630 S.W.2d 185, 189 (Mo.App.1982). Under Missouri law, the prosecutor has sole discretion to enter a nolle prosequi without interference by the trial court in which the prosecution is pending. *State ex rel. Griffin v. Smith,* 363 Mo. 1235, 258 S.W.2d 590, 593 (1953). The prosecutor's discretion in nolprossing has been limited only recently in *State ex rel. Norwood v. Drumm,* 691 S.W.2d 238, 241 (Mo.banc 1985), where the Supreme Court held that a trial court could deny a prosecutor leave to enter a nolle prosequi on a murder charge after a guilty verdict and before sentencing. The case before us is unlike *State ex rel. Norwood v. Drumm.* Defendant's assertion that he was prejudiced by the entrance of the nolle prosequi, we find without merit. Defendant's sixth point on appeal is denied.

In his final allegation of error, defendant alleges the court erred in denying defendant's motion to prohibit the state from asking death-qualification questions during voir dire and excluding prospective jurors who would not consider the death penalty as possible punishment for the crime committed. Defendant contends he was denied a fair and impartial jury selected from a cross-section of the community in violation of his constitutional rights.

The exclusion of prospective jurors who indicate they would not consider imposing the death penalty has been held constitu-

tional by the Supreme Court. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The United States Supreme Court recently ruled that states may continue to exclude jurors who say their opposition to the death penalty would "prevent or substantially impair the performance of ... duties as jurors ..." in a death penalty case. *Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). The Missouri Supreme Court has consistently approved challenging for cause prospective jurors who indicate that they cannot impose the death sentence. *State v. Mathenia,* 702 S.W.2d 840, 845 (Mo.banc 1986); *State v. Gilmore,* 697 S.W.2d 172 (Mo.banc 1985). We need not restate the analyses set forth in those decisions except to state that we concur therein. Defendant's final point is denied.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.