**STATE of Missouri,
Plaintiff–Respondent,**

v.

**James Earl JACKSON,
Defendant–Appellant.**

No. 51976.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 12, 1988.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
May 16, 1988.

Application to Transfer Denied
June 14, 1988.

Dave Hemingway, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

James Earl Jackson appeals from his conviction for first degree murder, in violation of Section 565.020.1, RSMo Cum.Supp. 1984, obtained in the Circuit Court of St. Louis County, Missouri. The jury assessed punishment at life imprisonment without the possibility of probation or parole. Finding no prejudicial error, we affirm.

The state charged the defendant with acting with Colbert Fairley in the murder of eighty-five year old Agnes Gwaltney in her Wellston home on April 29, 1985. Frances Cooper, a friend and neighbor, discovered the body of the victim the following day when she went to check on her after several unsuccessful attempts to reach the victim by telephone. She found the victim lying on her back in an interior doorway. The victim's house dress was pulled up, her legs were spread apart, her undergarments were missing, and her genital area was exposed. A pathologist testified that the victim died as a result of ligature strangulation, that is by the tightening of an object around the neck with sufficient force to cut off the oxygen supply to her brain. The victim's body revealed evidence of a struggle; her face was bloody and there were bruises and abrasions on her hands, arms and neck.

In addition, the house had been ransacked; all of the drawers had been taken from the victim's dressers, clothes were removed and the mattress was off of the bed. Scattered papers were found on the floor in the dining area. One of them revealed a latent palm print which matched that of the defendant. A dusting powder turned up shoe tread impressions which

were similar in pattern and size to the defendant's shoe.

There was no evidence of vaginal penetration nor was the presence of any semen found on the victim. A criminalist testified that he examined a pubic hair found in combings of the victim's pubic region and that it was his opinion that it was of "Negroid" origin, but he was unable to determine whether the hair belonged to the defendant.

Defendant made three tape recorded statements to the police on May 2 and 3, 1985. In essence, he claimed that Fairley had sought him out to inform him that he had a "house set up" with "a whole lot of stuff there." The defendant's statements are inconsistent in several significant ways; however, he consistently lays the blame for the actual murder on Fairley and claims that Fairley remained in the victim's home fifteen to twenty minutes longer than the defendant. He admitted stealing a pistol, a fan, a box of frozen chicken and a roll of wallpaper.

■ Defendant is a black male and has raised the issue of discrimination in the state's use of peremptory challenges in the selection of the jury after voir dire. The trial court should be commended for its perceptive understanding of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and for the method in which it handled the *Batson* hearing in this trial.[1] The trial court concluded "[T]he prosecutor has in this case articulated a neutral explanation relative to the particular case to be tried, and in the Court's opinion, has given a clear and reasonably specific explanation of legitimate reasons for exercising those challenges. Therefore, the Court allows those challenges to be taken." With a specific finding of fact

available on the record of this trial, our standard of review gives deference to the trial court and will set aside the finding of fact only if it is clearly erroneous. *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987). A trial court's findings of fact are clearly erroneous only if, after reviewing the record, this court is left with a definite and firm impression that the trial court made a mistake. *Sanders v. State*, 716 S.W.2d 844, 846 (Mo.App.1986).

■ We have carefully reviewed the transcript of the voir dire and the *Batson* hearing, and we are not convinced that the trial court erred. A panel of ten white and two black jurors decided this case. The prosecutor was allowed nine peremptory challenges; he used five of them to remove blacks from the panel. The transcript reveals that each black venireperson was stricken for a sufficiently valid, neutral reason based upon questions asked the individuals during voir dire. White venirepersons who responded similarly were also stricken. Defendant's *Batson* challenge is without merit.

■ Defendant's second point on appeal is that the trial court erred in refusing to strike for cause venireperson Collier from the jury panel. The basis for this contention is that Collier initially stated that he would automatically impose a death sentence if the defendant was found guilty of capital murder; however, upon further questioning by the prosecutor, Collier stated that he could keep an open mind and would impose a sentence of life imprisonment if the facts warranted it. Defendant's point is without merit for two reasons. First, review of the record supports the trial court's determination.[2] Although Collier originally stated that he would automatically impose the death penalty, further

---

1. This case was tried two weeks after the *Batson* opinion was handed down.

2. In overruling defendant's motion to strike Collier for cause, the trial court explained:

    That motion to strike for cause will be denied. The court does not find that his views would prevent or substantially impair the performance of his duties as a juror in accordance with the instructions and his oath, and I think he has indicated an ability to do that. I

think what he has indicated more than anything is he is death penalty prone, but that doesn't mean that he is disqualified as a juror just because he has a predisposition that way, but I think when confronted in more detail relative to his position, he indicated the ability to be able to evaluate the evidence and consider all the penalties that the Court would instruct upon.

questioning disclosed that he would consider other penalties if they were more appropriate considering the evidence developed during trial. The trial court's action was not an abuse of discretion. *See, e.g., State v. Smith,* 649 S.W.2d 417 (Mo. banc), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); *State v. Merritt,* 734 S.W.2d 926 (Mo.App.1987).

■ Moreover, the defendant was not sentenced to death; therefore, the defendant has suffered no prejudice and any claimed constitutional infringement by reason of the death qualification process does not apply. *Merritt,* 734 S.W.2d at 932.

■ Defendant also insists the trial court erred in overruling his objections to the prosecutor's closing argument because the prosecutor distorted the evidence and attempted to inflame the jury with an appeal to their passion and sympathy. With respect to the argument that the prosecutor misstated the facts, we find that any error was harmless. It appears that the prosecutor confused the names of the defendant and the other assailant, Fairley, briefly during closing argument. Defendant argues that this misstatement of the facts implied that the defendant was the instigator of the crime rather than Fairley. Nevertheless, the evidence adduced at trial was overwhelmingly to the contrary so that the jury would not have been misled. In addition, although the trial court did not sustain defendant's objection, the jury was reminded that they were "bound by the evidence as they remember it." Moreover, later in closing argument, the prosecutor corrected himself after the defense attorney commented on the fact that he was confusing the two co-defendants. A misstatement by a prosecutor does not automatically result in prejudicial error. Such a misstatement of fact constitutes reversible error only if, after considering the entire record, it is determined that the error denied defendant a fair trial. *State v. Bellew,* 586 S.W.2d 461, 463 (Mo.App.1979) (en banc). Defendant's trial was not tainted by the misstatement; no prejudice was shown to have resulted.

■ The second allegation under this point urges us to find that certain statements by the prosecutor inflamed the jury by appealing to their sympathy for the elderly victim. The passages of which defendant complains are as follows:

MR. ELLIS: Now, this woman was eighty-five years old when she was murdered in 1985, and you think back at the life this woman lived, think what the changes she has seen in our country, the changes she has seen—

MR. KESSLER: I object to his [sic]. This is not based on any evidence. It's not reasonable inference. It's nothing. It's personalizing with the jury, and it's meant to prejudice them. It's not based on any evidence in this case.

THE COURT: The objection is overruled.

MR. ELLIS: Think of the changes this woman has seen in her life, in transportation, in electronics, T.V. I mean, think of the changes. She has lived from 1900 to 1985 on God's earth, and then she dies because these two guys decide to rip her off, and they want to eliminate a witness. This is the—these are the two coldest blooded killers you could ever look at if you are sitting on a jury. You cannot conceive—okay. You are going to rip her off. You are going to go in and kill her, to eliminate a witness. My God, why did they have to do this? Can you tell me? Can any of you tell me why did they have to do this? Why did they have to have her panties off by her head? ... Why did they have to do this? Why? Did they do this before she was dead or after she was dead? How many times did he go in and out of that house? How many times did they victimize this woman, while she was alive, while she was dead? Why do we have a pubic hair of a black person on her pubic hairs? Why are her panties off? Why is her body in this position? You know why. It's so disgusting it makes you want to puke.

Now, the community's outraged by crime, and you are here as representatives of the community, and I pray to God you are—

MR. KESSLER: I object to his invoking God in his prayers.

THE COURT: The objection will be overruled.

MR. ELLIS: If there is any humanity in anyone's soul, you look at what they did to this woman and it is outrageous.

Although the argument of the prosecutor is not the type we wish to condone, it does not rise to the level where it has prejudiced the defendant. In a criminal prosecution, the trial court has broad discretion in the control of closing argument. *State v. Newlon,* 627 S.W.2d 606, 616 (Mo. banc), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982). In addition, considerable latitude is accorded to counsel in such argument. *Id.* Counsel should not misstate or pervert the evidence; however, he may "draw non-evidentiary conclusions fairly justified as inferences from the evidence." *State v. Fuhr,* 660 S.W.2d 443, 448 (Mo.App.1983). The prosecutor's comments are within the bounds of inferences reasonably drawn from the evidence. Contrary to the defendant's assertion that there was no evidence that he ever returned to the victim's home after the initial crime, a witness testified she overheard the two defendants discussing whether they should go back in or not. This testimony was a sufficient basis for the argument that the defendants may have returned to the victim's home. There was also evidence that the victim knew Fairley; thus, the inference concerning elimination of the witness has an evidentiary basis. This is also true of the description of the condition in which the victim was found, a condition which manifests possible sexual involvement during the crime. The trial court did not err in overruling the defendant's objections to the prosecutor's argument as it was based on permissible inferences from the evidence developed at trial and was not an irrelevant attempt to inflame the passions of the jury for the elderly victim.

■ Defendant's final point on appeal urges us to hold that the trial court erred in admitting into evidence a pubic hair combing of the victim which revealed a pubic hair of "negroid" origin where there was no evidence of actual or attempted rape and where the foreign pubic hair could not be established as coming from the de-

fendant. Defendant was aware that, should the state submit a second degree murder instruction, attempted rape might be submitted as the underlying felony. The jury was in fact instructed on both first degree murder and second degree murder with rape or attempted rape as the underlying felony. Evidence is relevant if it tends to prove or disprove a fact in issue or corroborate evidence which is relevant and bears on the principal issue. *State v. Clark,* 711 S.W.2d 928, 932 (Mo.App.1986). The foreign pubic hair was relevant and probative of the allegations of rape and attempted rape because it supplied the only logical, direct evidence of sexual contact. The evidence may also have been prejudicial; however, it is within the trial court's discretion to determine whether relevant but prejudicial evidence should be admitted. *State v. Gilmore,* 661 S.W.2d 519, 523 (Mo. banc 1983), *cert. denied,* 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); *Clark,* 711 S.W.2d at 932. Unless there is a clear abuse of discretion, we will not interfere with the trial court's decision. *Id.* Under the circumstances, the trial court's decision was not an abuse of discretion.

The judgment is affirmed.

STEPHAN and DOWD, JJ., concur.